**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Trisha Tshudy, | : |
| | : |
| *Plaintiff* | : |
| | : Civil Action No.   22-cv-03336 |
| vs. | : |
| | : Hon. Wendy Beetlestone |
| Pennsylvania State University | : |
| | : |
| *Defendant* | : |
| | : |

**PROPOSED ORDER**

     **AND NOW**, this _____ day of _____, 2022, upon consideration of Plaintiff, Trisha Tshudy's Amended Motion for a Permanent and/or Preliminary Injunction, and the Response in Opposition of Defendant, The Pennsylvania State University, it is hereby **ORDERED** that said Motion is **DENIED**.

                        **BY THE COURT:**

_____
THE HONORABLE WENDY BEETLESTONE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Trisha Tshudy, | : |
| | : |
| *Plaintiff* | : |
| | : Civil Action No.   22-cv-03336 |
| vs. | : |
| | :  Hon. Wendy Beetlestone |
| Pennsylvania State University | : |
| | : |
| *Defendant* | : |
| | : |

---

**THE PENNSYLVANIA STATE UNIVERSITY'S RESPONSE**
**AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**AMENDED MOTION FOR A PERMANENT AND/OR PRELIMINARY INJUNCTION**

---

Dated:  September 9, 2022

**BUCHANAN INGERSOLL & ROONEY PC**

By*:   /s/ Geoffrey F. Sasso*
   Geoffrey F. Sasso (Pa. ID 202936)
   George Morrison (Pa. ID 203223)
   Erin Lucas Hamilton (Pa. ID 93852)
   Two Liberty Place
   50 S. 16th Street, Suite 3200
   Philadelphia, PA 19102
   P: 215-665-8700
   F: 215-665-8760
   geoff.sasso@bipc.com
   george.morrison@bipc.com
   erin.hamilton@bipc.com

   *Attorneys for Defendant, The*
   *Pennsylvania State University*

**TABLE OF CONTENTS**

1. INTRODUCTION ...................................................................................... 1

2. FACTUAL AND PROCEDURAL BACKGROUND........................................... 1

   (a) Ms. Tshudy's Enrollment and Scholarship to Dickinson Law .............. 1

   (b) The Accommodations Afforded to Ms. Tshudy ................................... 2

   (c) The Fall 2021 Exams .................................................................... 3

   (d) The Dickinson Law Honor Code ...................................................... 6

   (e) Ms. Tshudy's Plagiarism ............................................................... 7

   (f) The Honor Code Hearing ............................................................... 8

   (g) Ms. Tshudy's Scholarship is Revoked .............................................. 12

   (h) Ms. Tshudy's Communications with PSU's Finance Office and the Admissions and Financial Aid Office .................................................. 13

   (i) Relevant Procedural Background and Current Posture ....................... 15

3. LEGAL STANDARD ................................................................................ 16

4. ARGUMENT .......................................................................................... 18

   (a) Ms. Tshudy Has Not (and Cannot) Establish a Likelihood of Success on the Merits ..................................................................................... 18

      (i) Plaintiff Cannot Prevail on her Due Process Claim ................. 18

      (ii) Plaintiff Cannot Prevail on her Discrimination/ADA Claim ...... 21

      (iii) Plaintiff Cannot Prevail on her First Amendment Claim .......... 23

   (b) Ms. Tshudy Cannot Establish Irreparable Harm ................................ 26

   (c) The Balance of Harms Weighs Heavily Against Issuing an Injunction .............. 28

   (d) The Public Interest Weighs Against Issuing an Injunction ................... 29

5. CONCLUSION ........................................................................................ 29

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acosta, Inc. v. Navitsky*,
    Civil Action No. 17-3282, 2018 WL 1251640 (E.D. Pa. 2018) ..................................16, 17, 29

*Adams v. Freedom Forge Corp.*,
    204 F.3d 475 (3d Cir. 2000)................................................................................26

*In re Arthur Treacher's Franchisee Litig.*,
    689 F.2d 1137 (3d Cir. 1982)..............................................................................27

*Berardelli v. Allied Services Institute of Rehabilitation Medicine*,
    900 F.3d 104 (3d Cir. 2018)................................................................................22

*Brennan v. Norton*,
    350 F.3d 399, 419 (3d Cir.2003).........................................................................25

*Camacho Lopez v. Lowe*,
    452 F. Supp. 3d 150 (M.D. Pa. 2020)..................................................................18

*Campbell Soup Co. v. ConAgra, Inc.*,
    977 F.2d 86 (3d Cir. 1992)..................................................................................26

*Doe v. University of Sciences*,
    Civil Action No. 19-358, 2020 WL 5211028 (E.D. Pa. Sept. 1, 2020) ...................27

*Eck v. Oley Valley School District*,
    431 F. Supp .3d 607, 626 (E.D. Pa. 2019) ...........................................................19

*Ferring Pharms., Inc. v. Watson Pharms., Inc.*,
    765 F.3d 205 (3d Cir. 2014)................................................................................17

*Frazier v. Pennsylvania State University*,
    No. 4:21-cv-00350, 2022 WL 1570477 (M.D. Pa. May 18, 2022) .........................21

*Goss v. Lopez*,
    *419 U.S. 565, 576, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975)*.....................................19

*Henson v. Honor Committee of U.Va.*,
    719 F.2d 69 (4th Cir. 1983) ...............................................................................21

*Herman v. Hostrman*,
    Civil Action No. 1:11-cv-989, 2011 WL 4974184 (M.D. Pa. Oct. 19, 2011) .........25

*Hewlette-Bullard of behalf of J.H-B. v. Pocono Mountain School District*,
    522 F. Supp. 3d 78, 100 (M.D. Pa. 2021) .........................................................19, 20

*Howe v. Pennsylvania State University – Harrisburg*,
    Civil Action No. 1:16-0102, 2016 WL 393717 (M.D. Pa. Feb. 2, 2016) ...............27

*Issa v. Sch. Dist. of Lancaster*,
    847 F.3d 121, 142 (3d. Cir. 2017).........................................................................28

*Johnson v. Temple University*,
    Civil Action No. 12-515, 2013 WL 5298484 (E.D. Pa. Sept. 19, 2013) ...........19, 20

*Mahmood v. Nat'l Bd. of Med. Examiners*,
    No. 12-1544, 2012 WL 2368462, *5 (E.D. Pa. June 21, 2012)..............................27

*McKee v. Hart*,
    436 F.3d 165, 170 (3d Cir. 2006)..........................................................................25

*Meghrig v. KFC Western, Inc.*,
    516 U.S. 479 (1996).............................................................................................17

*Munaf v. Geren*,
    553 U.S. 674 (2008) ............................................................................................17

*Noakes v. Case Western Reserve University*,
    Case No. 1:21-cv-1776, 2021 WL 4441608 (N.D. Ohio Sept. 28, 2021)...............28

*Palmer by Palmer v. Merluzzi*,
    868 F.2d 90 (3d Cir. 1989)....................................................................................19

*Park v. Temple University*,
    Civil Action No., 16-5025, 2019 WL 1865060, *10 (E.D. Pa. April 25, 2019)...............18, 19

*Punnett v. Carter*,
    621 F.2d 578 (3d Cir. 1980)..................................................................................17

*Reilly v. City of Harrisburg*,
    858 F.3d 173, 179 (3d Cir. 2017)..........................................................................17

*Revell v. City of Jersey City*,
    394 Fed. Appx. 903 (3d Cir. 2010) (*unpublished*)................................................25

*Revzip, LLC v. McDonnell*,
    Case No. 3:19-cv-191, 2019 WL 6701835 (W.D. Pa. Dec. 9, 2019) .....................28

*Shields v. Zuccarini*,
    245 F.3d 476 (3d Cir. 2001)..................................................................................17

*Synthes, Inc. v. Gregoris*,
   228 F. Supp. 3d 421 (E.D. Pa. 2017) ...................................................................28

*Thomas v. Independence Twp.*,
   463 F.3d 285 (3d Cir. 2006)...................................................................................24

*United States v. City of Philadelphia*,
   No. 06-4592, 2006 WL 3922115 (E.D. Pa. Nov. 7, 2006) ....................................18

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................16

42 U.S.C. § 1983 .....................................................................................................18, 23

**Other Authorities**

11A Fed. Prac. & Proc. Civ. § 2948.4 (3d ed.).............................................................29

*Trade Secret Rising: Protecting Equivalency Test Research and Development
   Investments After Momenta v. Amphastar*, 22 J. Intell. Prop. L. (2014)......................*passim*

www.turnitin.com ...........................................................................................................9

Defendant, The Pennsylvania State University ("PSU"), by and through its undersigned counsel, submits this Response and Memorandum of Law in Opposition to Plaintiff's, Trisha Tshudy's Amended Motion for a Permanent and/or Preliminary Injunction.

## 1.    INTRODUCTION

This is an action seeking damages and injunctive relief following the revocation of Plaintiff, Trisha Tshudy's ("Ms. Tshudy") scholarship after the Honor Code Hearing Board of Penn State Dickinson Law ("Dickinson Law") found that Ms. Tshudy committed plagiarism in connection with one of her courses. Notably, during the hearing, Ms. Tshudy admitted to the Hearing Board that she had committed the violation. Ms. Tshudy seeks injunctive relief in the form of "reinstatement" as a student based on her incorrect claim that PSU has "barred" her from enrolling in classes. The reality is that Ms. Tshudy is still a matriculated student at Dickinson Law, however, she is not eligible to register for classes as she has a delinquent tuition balance and is refusing to pay it. As set forth below, despite falsely clothing the true facts of this matter with legally/factually invalid claims of disability discrimination and constitutional violations, it is apparent that Ms. Tshudy is not entitled to any relief whatsoever, let alone emergent, injunctive relief.

## 2.    FACTUAL AND PROCEDURAL BACKGROUND

### (a)    Ms. Tshudy's Enrollment and Scholarship to Dickinson Law

On December 18, 2019, Ms. Tshudy was offered admission to Dickinson Law and awarded a full-tuition scholarship. *See* Declaration of Dickinson Law Dean Danielle M. Conway attached hereto as Exhibit 1 ("Conway Decl.") at ¶ 4 and Declaration of Dickinson Law Associate Dean for Admissions and Financial Aid Rebekah Saidman-Krauss attached hereto as Exhibit 2 ("Krauss Decl.") at ¶3. Ms. Tshudy's offer letter states that her scholarship "will be renewed automatically in [her] second and third years so long as [she remains] in good standing under the honor code and

academic rules." *See* Conway Decl. at ¶ 5 and Krauss Decl. at ¶4. In the fall of 2020, Ms. Tshudy enrolled in Dickinson Law as a first-year law student. *See* Conway Decl. at ¶ 9.

      (b)    **The Accommodations Afforded to Ms. Tshudy**

      Ms. Tshudy has a documented disability and she applied for and received academic accommodations that began in Fall 2020 and continued through academic years 2020-2021 and 2021-2022. *See* Declaration of Dickinson Law Associate Dean for Academic and Student Services Jeffrey A. Dodge attached hereto as Exhibit 3 ("Dodge Decl.") at ¶ 3. For the Fall 2021 semester, Ms. Tshudy's accommodations for the classroom setting were as follows:

- Use of a service dog in classes, exams, and around the building;
- Access to recorded class lectures;
- Unlimited use of tutoring services;
- Allowed to take breaks during class that may require leaving the Classroom;
- Allowed to eat and drink during class, oral arguments etc., limited only by COVID-19 restrictions; and
- Enrolling in class remotely for Fall 2021.

*Id.* Ms. Tshudy also applied for and received the following academic accommodations for examinations for the Fall 2021 semester:

- 100% extended time to take exams/quizzes in a private room; and
- Allowed to take breaks during exams that may require leaving the testing room.

*See* Dodge Decl. at ¶4. At no point – including in Fall 2021 - did Ms. Tshudy apply for, request, or receive accommodations that would permit her to take her exams online or remotely. *See* Dodge Decl. at ¶5.

      Over the summer of 2021, PSU announced that instruction for the 2021-2022 academic year would return to in-person. *See* Dodge Decl. at ¶6. However, Dickinson Law elected to allow students with compelling personal health circumstances related to COVID-19 to continue to enroll in classes remotely for the Fall 2021 semester. *Id.*

      In or about July 2021, Ms. Tshudy submitted a request for a remote-only learning

accommodation. *See* Dodge Decl. at ¶7. On July 4, 2021, Ms. Tshudy's request for Remote Adjustment was approved and she was permitted to attend classes remotely for the Fall 2021 semester, but was advised that it was "expected that this will be the final semester where a remote-learning option is available." *See* Dodge Decl. at ¶8.

During her first three semesters at Dickinson Law, Ms. Tshudy asked for and received several adjustments to her schedule due to various issues. *See* Dodge Decl. at ¶9. By way of example, at the end of the Fall 2020 semester, Ms. Tshudy asked to drop Legal Research for medical reasons. *See* Dodge Decl. at ¶10. Her request was granted and, thereafter, she complimented several members of the faculty/administration stating that she "continue[s] to be astonished by the understanding and support the administration of Dickinson Law provides to its students." *Id.*

By way of further example, on September 30, 2021, Ms. Tshudy contacted Associate Dean for Academic and Student Services Jeffrey A. Dodge ("Associate Dean Dodge") and requested an extension for several assignments that were due during the Fall Semester due to the recent death of one of her pets. *See* Dodge Decl. at ¶11. Associate Dean Dodge expressed his condolences to Ms. Tshudy and personally wrote to her professors to request that they reschedule her assignments that were due over the next few weeks. *See* Dodge Decl. at ¶12.

(c)    **The Fall 2021 Exams**

In connection with the announced return to in-person instruction, Dickinson Law reverted back to examination software utilized prior to the pandemic. *See* Dodge Decl. at ¶13. This software required students to be present on campus to take their Fall 2021 exams. *Id.* Thereafter, in October 2021, Associate Dean Dodge advised all students with remote adjustments, including Ms. Tshudy, that final examinations would need to be taken on campus. *See* Dodge Decl. at ¶14. Ms. Tshudy did not respond to Associate Dean Dodge's email. *See* Dodge Decl. at ¶15. The two other

Dickinson Law students who had received remote adjustments raised no issue and were willing to attend their exams in person. *See* Dodge Decl. at ¶16. One of these students was located in California. *Id.*

Having not heard from Ms. Tshudy, on November 15, 2021, Associate Dean Dodge followed up with her via email about the need for her to take her examinations in person. *See* Dodge Decl. at ¶17. Ms. Tshudy did not respond to this second email. *See* Dodge Decl. at ¶18.

On November 30, 2021, Dickinson Law's then Assistant Director of Student Services, Julie Lynn Cullings, sent an email to Ms. Tshudy and provided her with an examination schedule and room assignments. *See* Dodge Decl. at ¶19. Ms. Tshudy responded to Ms. Cullings' email on December 2, 2021 and inquired why her examinations were being administered in person and raised issues regarding her unfamiliarity with the environment, the need for a close restroom, and allowances for food, beverages, and medications. *See* Dodge Decl. at ¶20. In response to Ms. Tshudy's December 2, 2021 email, Associate Dean Dodge contacted her by telephone. *See* Dodge Decl. at ¶21. During this call, Ms. Tshudy confirmed that she had received Associate Dean Dodge's prior emails, but advised that she had not read them. *Id.* Associate Dean Dodge discussed with Ms. Tshudy the need to take her exams in-person due to requirements of the examination software. *Id.* Ms. Tshudy's primary concern expressed during this conversation was that she was unfamiliar with Dickinson Law's campus and may have difficulty locating her room. *Id.* During this conversation, Associate Dean Dodge also informed Ms. Tshudy that Dickinson Law would provide her with a quiet, private room with convenient access to the restroom and that it would accommodate her service animal, her need to take breaks, and her need to have food, beverages, and medications present. *See* Dodge Decl. at ¶22. At the end of the call, Ms. Tshudy appeared satisfied with the situation and indicated she would attend her exams in person. *See* Dodge Decl. at ¶22. To ease Ms. Tshudy's concerns, on December 2, 2021, Ms. Cullings sent Ms. Tshudy an

email with photographs of the examination room, the exit path, and the restrooms. *See* Dodge Decl. at ¶23.

The following day, Ms. Cullings sent Ms. Tshudy another email with additional details about her exams. *See* Dodge Decl. at ¶24. In the email, Ms. Cullings advised Ms. Tshudy of the items she was permitted to bring (*i.e.* food, drinks, earplugs, medication, etc.), the exact location of the room on campus, and information relating to arrangements made to accommodate Ms. Tshudy's service dog. *Id.*

On December 14, 2021, Ms. Tshudy asked to reschedule that day's Federal Income Tax final exam due to illness and this request was granted. *See* Dodge Decl. at ¶25. Thereafter, Ms. Tshudy emailed Pamela Knowlton, Dickinson Law Registrar, and asked to take her Federal Income Tax final exam on December 16, 2021. *See* Dodge Decl. at ¶26. This second request was also granted and, in response, Ms. Tshudy outlined her plan to take her remaining exams and advised that she would submit her final paper for her course, *BioTech, Pharmaceuticals & the Law*, by the due date of December 15, 2021. *See* Dodge Decl. at ¶27. At no point did Ms. Tshudy ask for an extension to submit her final paper for *BioTech, Pharmaceuticals & the Law*. *See* Dodge Decl. at ¶28.

Ms. Tshudy did not submit her paper by the due date and, on December 17, 2021, Adjunct Professor James M. Gould ("Adjunct Professor Gould") wrote to Ms. Tshudy and inquired about the lateness of her paper. *See* Dodge Decl. at ¶29. At 11:57 p.m. on December 17, 2021, Ms. Tshudy submitted her final paper to Professor Gould. *See* Dodge Decl. at ¶30. In the submission email, Ms. Tshudy seemingly implied that Dickinson Law administration provided her with an extension to submit the paper – which is inaccurate – and faulted the administration for not communicating this non-existent extension to Professor Gould. *Id.*

5

(d)     **The Dickinson Law Honor Code**

All at times material to this lawsuit, Dickinson Law had in place an Honor Code (the "Dickinson Law Honor Code") that sets for ethical rules, principles, and standards of academic integrity for its students in order to "safeguard and promote the ideals of honor and integrity by prohibiting lying, cheating, stealing, and other dishonorable conduct of an academic nature." *See* Conway Decl.at ¶ 6 and Declaration of Dickinson Law Associate Dean for Administration and Honor Code Administrator Laura H. Williams attached hereto as Exhibit 4 ("Williams Decl.")  at ¶6.   The Dickinson Law Honor Code also sets forth the procedure for adjudicating alleged substantive violations of the Dickinson Law Honor Code as well as other PSU academic rules, including, but not limited to, instances of suspected plagiarism. Ms. Tshudy has admitted she signed the Dickinson Law Honor Code. *See* January 14, 2022 Honor Code Hearing Transcript attached hereto as Exhibit 5 at p. 213:8-11. *See* Conway Decl.at ¶ 7 and Williams Decl. at ¶7. The Dickinson Law Honor Code defines "plagiarism" in Article 1.1(L) as:

> Should be given its usual dictionary meanings: to steal and pass off (the ideas or words of another) as one's own; to use (a created production) without crediting the source or to commit literary theft, presenting as new and original an idea or product derived from an existing source. Plagiarism includes the copying or paraphrasing without acknowledgment of any material written or expressed by another person, and the submission of work written in whole or in substantial part by someone other than the student who submits the work as the student's own work. Plagiarism also includes the re-submission of work originally completed for another course and the giving or receiving of excessive assistance or making excessive use of the work of someone else in preparing an assignment, without faculty approval. What constitutes "excessive assistance" or "making excessive use of the work of someone else" is a matter for the course professor to decide and communicate in a timely manner to the students. Unless the course professor gives different instructions, "excessive assistance" should be construed with reference to the academic purpose of the assignment - to develop the student's research and writing skills and to evaluate his or her skills. A student may receive some counsel and suggestions from other people, e.g., another student, the course professor, so long as the paper is, in both pedagogical and literary senses, the work of the student.

*See* Conway Decl. at ¶ 8 and Williams Decl. at ¶8.  The *Biotech, Pharmaceuticals and the Law*

Course Policies also contain a section entitled "Academic Integrity Statement" which references the Dickinson Law Honor Code and the expectations of students enrolled in the course. *See* Williams Decl. at ¶9.

(e)    **Ms. Tshudy's Plagiarism**

On or about December 31, 2021, Adjunct Professor Gould, alerted Dickinson Law Associate Dean for Administration and Honor Code Administrator Laura H. Williams ("Associate Dean Williams") and Associate Dean Dodge of an instance of suspected plagiarism by Ms. Tshudy in connection with the final paper she submitted for his Fall 2021 course, *Biotech, Pharmaceuticals and the Law*. *See* Conway Decl. at ¶ 10 and Williams Decl. at ¶4. More specifically, it appeared that Ms. Tshudy's paper exhibited a high degree of tracking with a Note published by Hannah-Alise Rogers entitled *Trade Secret Rising: Protecting Equivalency Test Research and Development Investments After Momenta v. Amphastar*, 22 J. Intell. Prop. L. (2014) (the "Rogers Note"). *See* Conway Decl. at ¶ 10; Dodge Decl. at ¶31 and Williams Decl. at ¶ 4. Adjunct Professor Gould also provided a copy of Ms. Tshudy's paper in which he highlighted several examples that appeared to be direct copies from the Rogers Note. *See* Williams Decl. at ¶5. Adjunct Professor Gould did not employ any kind of automated plagiarism checker in preparing his highlighted copy of Ms. Tshudy's paper. *Id.* Among the concerns raised by Adjunct Professor Gould was that Ms. Tshudy's paper included cited cases and passages that matched the Rogers Note exactly and Ms. Tshudy's paper contained no reference to the Rogers Note. *See* Dodge Decl. at ¶32.

On or about January 2, 2022, Associate Dean Williams utilized a plagiarism comparison program to compare Ms. Tshudy's paper with the Rogers Note, which demonstrated that 29% of Ms. Tshudy's paper represented content from the Rogers Note. *See* Williams Decl. ¶10. On or about January 3, 2022, Associate Dean Williams proceeded to manually compare Ms. Tshudy's paper with the Rogers Note by highlighting the similarities between the two papers, which revealed

even more content from the Rogers Note was contained in Ms. Tshudy's paper as compared to the original comparison report referenced above.  *See* Williams Decl. at ¶11.

On or about January 3, 2022, Associate Dean Williams, and Professor Sabrina Sondhi, informed Ms. Tshudy of the accusation of plagiarism by telephone. *See* Conway Decl. at ¶ 11 and Williams Decl. at ¶12. Thereafter, Associate Dean Williams sent Ms. Tshudy an email acknowledging the call and also sent her the text of the Dickinson Law Honor Code. *Id.* On or about January 4, 2022, Associate Dean Williams notified Ms. Tshudy that based on her highlighted comparison of Ms. Tshudy's paper to the Rodgers Note, her paper was in direct contravention of the Dickinson Law Honor Code.  *See* Williams Decl. at ¶13. Associate Dean Williams further notified Ms. Tshudy that if she elected not to make a Conscientious Admission per the Dickinson Law Honor Code, that she would recommend to the Honor Committee Chair to proceed to a hearing.  *Id.*

Ms. Tshudy declined to make a Conscientious Admission and she was then advised that a hearing would be conducted before an Honor Code Hearing Board. *See* Conway Decl. at ¶ 12 and Williams Decl. at ¶14. A report was made to the Chair of the Dickinson Law Honor Committee, and he determined that probable cause existed for the accusation. *See* Conway Decl. at ¶ 13 and Williams Decl. at ¶15.  Thereafter, steps were taken to hold an Honor Code Hearing, including assembling a Hearing Board that consisted of three students, as well as Dickinson Law faculty members, William E. Butler and Megan Riesmeyer, all of whom were members of Dickinson Law's Honor Committee. *Id.*

(f)     **The Honor Code Hearing**

On January 6, 2022, the Honor Code Committee issued a Notice of Honor Code Proceeding to Ms. Tshudy, which set a hearing date and time of January 14, 2022, 1:00 p.m.  *See* Williams Decl. at ¶16. On January 7 and 10, 2022, and per Chapter Three of the Dickinson Law Honor Code

8

entitled "Rights of the Accused," Associate Dean Williams provided and otherwise identified evidence that would be used at the January 14, 2022 hearing to Ms. Tshudy.  *See* Williams Decl. at 18. Associate Dean Williams expressly notified Ms. Tshudy that "[a] side-by-side comparison of your paper and the Law Review Note, run through plagiarism software," would be utilized as evidence at the hearing. *Id.*

On January 12, 2022, Associate Dean Williams compared Ms. Tshudy's paper and the Rogers Note with an online plagiarism checker hosted at www.turnitin.com, which demonstrated similar/identical content from the Rogers Note was contained in Ms. Tshudy's paper, as was already illustrated in Associate Dean Williams' hand-highlighted versions.  *See* Williams Decl. at ¶19.  On January 13, 2022, Associate Dean Williams provided a copy of these comparisons to Ms. Tshudy and noted that they "may be easier to read than the hand-highlighted version I sent previously."  *Id.*

The Honor Code Hearing was held on January 14, 2022 and lasted over four and a half hours. *See* Conway Decl.at ¶ 14 and Williams Decl. at ¶21. Ms. Tshudy did not appear at the hearing with legal representation, as is expressly permitted by the Dickinson Law Honor Code. *See* Williams Decl. at ¶21. As the Honor Code Administrator, Associate Dean Williams is charged with presenting a case against an accused student under the Dickinson Law Honor Code as the Presenter.  *See* Williams Decl. at ¶17. Prior to the hearing, Ms. Tshudy did not request an open hearing and further did not at any time challenge any potential Hearing Board Member for cause. *See* Williams Decl. at ¶20.

During the hearing, the Board questioned Ms. Tshudy extensively, reviewed relevant documents (including the Turnitin and hand-highlighted comparisons), and heard testimony from Adjunct Professor Gould. *See* Conway Decl. at ¶ 14 and Williams Decl. at ¶21. Adjunct Professor Gould spoke about the gravity of the violation and the portions of the Rogers Note contained in

Ms. Tshudy's paper, without citation to the Rogers Note. *See* Williams Decl. at ¶21. In accordance with Chapter Three of the Dickinson Law Honor Code, Ms. Tshudy attended the hearing where she testified, offered relevant evidence, was able to examine witnesses, including Associate Dean Williams and Adjunct Professor Gould, and made closing remarks. *Id.* Ms. Tshudy attended the Honor Code Hearing with a witness, but ultimately declined to call this witness to testify on her behalf. *See* Conway Decl. at ¶ 14 and Williams Decl. at ¶21.

During the Honor Code Hearing, Ms. Tshudy acknowledged that parts of her paper were word-for-word the same as the Rogers Note and that she did not cite the Rogers Note:

> **Ms. [N]:** The fact that it's [Ms. Tshudy's paper] word-for-word [the same as the Rogers Note], it's very, very jarring.
>
> **Ms. Tshudy:** Yes. Agreed.

*See* Exhibit 5 at p. 142: 16-18. *See also:*

> **Dean Williams:** You also agree, you read this, it is identical to this photograph, and in no way do you cite to this conclusion in Ms. Rogers' paper. How is it that if you never read Ms. Rogers' paper, you could copy her language word-for-word? Her conclusion, word-for-word? Her original work, word-for-word? How could you do that?
>
> **Ms. Tshudy:** I mean, I read different parts of it -- and, again, you brought this up initially and stuff, and I explained this right afterwards that this would be the most difficult thing for me to understand. And that, honestly, it has to guarantee that I definitely made a mistake somewhere in making sure that my citations matched up with everything …

*See* Exhibit 5 at p. 164: 7-25.[1] Ultimately, Ms. Tshudy admitted to plagiarism:

> **Mr. [R]:** Had such an option [admission to plagiarism as a strict liability offense] been presented to you, do you think you would have been likely to agree with that, or would you have felt that that was not an accurate representation of what happened? Had you been told plagiarism is irrelevant of intent? We have found these repeated passages in your paper and this –

---

[1] By way of further example, one of the copied sections of text from the Rogers Note included a typographical error in the form of the author's possible mis-citation to a reference. Ms. Tshudy's paper included this same error verbatim. *See* Exhibit 5 p 158:7-161:6.

> **Ms. Tshudy**: Oh, then I definitely would have agreed. If it was irrelevant of intent and it was just based on me being open to the idea that I made mistakes, I would have definitely agreed.

*See* Exhibit 5 at p. 198: 21-199:11.

Following their post-hearing deliberations, the Honor Code Hearing Board unanimously concluded, on the basis of clear and persuasive evidence, that Ms. Tshudy had violated Article 2.1(F) of Dickinson Law's Honor Code. *See* Conway Decl. at ¶ 15. The Hearing Board found that:

> Professor Gould became concerned about a possible violation of the Honor Code without having undertaken any exhaustive verification or using any automatic plagiarism checker. He found no reference to the Rogers Note in Ms. Tshudy's paper. Having contacted Associate Dean Jeffrey Dodge about the matter, who directed Professor Gould to alert Dean Williams, on 31 December 2021 Professor Gould notified Dean Williams by email of his concern.

*See* Williams Decl. at ¶22. The Hearing Board also made the following factual findings:

(a)   Ms. Tshudy had drawn upon and sometimes copied verbatim the Note published by Rogers in 2014 when preparing her assignment for Professor Gould in violation of the course instructions and of the Honor Code; and

(b)   Ms. Tshudy was, at least disingenuous, and, at worst dishonest in explaining the similarities between the Rogers Note and her own paper.

*See* Conway Decl. at ¶ 15 and Williams Decl. at ¶23. In view of its findings, the Honor Code Hearing Board issued the following sanctions to Ms. Tshudy:

(a)   A written reprimand to be included in Ms. Tshudy's student record; and

(b)   Denial of credit for the course, *Biotech, Pharmaceuticals and the Law* with an appropriate transcript entry;

*See* Williams Decl. at ¶24. The Honor Code Hearing Board also recommended that:

(a)   Ms. Tshudy schedule a meeting with Associate Dean Dodge to discuss mental health assistance; and

(b)   Ms. Tshudy schedule a meeting with Professor Titichia Jackson to receive counseling on academic success.

*See* Conway Decl. at ¶ 16 and Williams Decl. at ¶25. On January 16, 2022, the Hearing Board issued its Final Report to Associate Dean Williams and Ms. Tshudy. *See* Williams Decl. at ¶26.

The Dickinson Law Honor Code provides a right to appeal a decision of the Hearing Board to the Dean of Dickinson Law within seven (7) days of receipt of the report. *See* Williams Decl. at ¶27. Thereafter, Ms. Tshudy exercised her right to appeal the Honor Code Hearing Board's decision to the Dean of Dickinson Law. *See* Conway Decl.at ¶ 17 and Williams Decl. at ¶29.

Dickinson Law Dean Danielle Conway ("Dean Conway") reviewed the materials presented during the January 2022 hearing and also viewed a complete video recording of the hearing. *See* Conway Decl. at ¶ 18. On February 4, 2022, Dean Conway issued an opinion affirming the decision of the Honor Code Hearing Board. *See* Conway Decl. at ¶ 19. While not required to write an opinion setting forth her decision, Dean Conway chose to do so as she felt it appropriate to respond to several of the more flagrant assertions made by Ms. Tshudy in her appeal, particularly her allegations of "perjury" by a professor and a "lack of civility and decorum, and absolute negligence…" on the part of the Honor Code Hearing Board. *See* Conway Decl. at ¶ 20.

(g)      **Ms. Tshudy's Scholarship is Revoked**

On February 16, 2022, Dean Conway sent an email and correspondence to Ms. Tshudy, advising her that her scholarship was revoked as she was no longer in good standing under the Academic Rules and the Honor Code in line with the sanctions imposed by the Honor Code Hearing Board and Dean Conway's affirmance of that decision. *See* Conway Decl. at ¶ 21 and Krauss Decl. at ¶5. Dean Conway's email further advised Ms. Tshudy that her scholarship would not be retroactively revoked for her first three semesters (*i.e.*, Fall 2020, Spring 2021, and Fall 2021), but that it was revoked for the Spring 2022 semester and for the 2022-2023 academic year. *See* Conway Decl. at ¶ 22 and Krauss Decl. at ¶6. In addition, Dean Conway's email advised Ms. Tshudy that she had a balance due of $26,688.00 and that she should contact the Admissions and Financial Aid Office should she wish to apply for loans to cover this balance and any tuition owed for subsequent semesters. *See* Conway Decl. at ¶ 22 and Krauss Decl. at ¶7.

At the time her scholarship was revoked, Ms. Tshudy had sufficient time to apply for and receive financial aid to allow for any loans to satisfy her outstanding tuition balance for the Spring 2022 semester and cover the cost of her final semesters at Dickinson Law. *See* Krauss Decl. at ¶ 8. To date, Ms. Tshudy has never contacted the Admissions and Financial Aid Office to inquire about the process of applying for loans. *Id.*

**(h)     Ms. Tshudy's Communications with PSU's Finance Office and the Admissions and Financial Aid Office**

In or around June 2022, Dean Conway was made aware that Ms. Tshudy had contacted the Finance Office and the Admissions and Financial Aid Office, as well as the Bursar's Office at PSU. *See* Conway Decl. at ¶ 2 and Krauss Decl. at ¶ 9. Specifically, Ms. Tshudy contacted PSU's Bursar's Office April 6, 2022, April 27, 2022, June 6, 2022, and twice on August 1, 2022. *See* Krauss Decl. at ¶ 9. Ms. Tshudy did not contact these offices to discuss loans, rather, she informed employees in those offices that there was an "administrative error" that resulted in the revocation of her scholarship. *See* Conway Decl. at ¶ 23; *See* Krauss Decl. at ¶¶9-10. During these calls, Ms. Tshudy urged employees of these offices to reinstate her scholarship. *See* Krauss Decl. at ¶¶ 9-10.

Because there was no "administrative error" and because Ms. Tshudy had been advised of the reasons why her scholarship was revoked, Dean Conway emailed Ms. Tshudy and requested that she "refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of your scholarship." *See* Conway Decl. at ¶ 24. Ms. Tshudy responded to Dean Conway that she was aware that her scholarship had been revoked mid-semester and she denied informing others that there had been an administrative mistake. *See* Conway Decl. at ¶ 25.

Thereafter, Dean Conway listened to a voicemail Ms. Tshudy left for the Office of Admissions and Financial Aid and also reviewed notes from calls Ms. Tshudy made to PSU's

Bursar's Office in April and June 2022. *See* Conway Decl. at ¶ 26. Those notes reflected that Ms. Tshudy informed PSU employees that her scholarship had been "removed in error" and that she requested that the funds be posted back to her account. *Id.* By way of example, the note for a June 6, 2022 call from Ms. Tshudy states as follows:



*See* Conway Decl. at ¶ 27 and Krauss Decl. at ¶10. Furthermore, on June 7, 2022, Rebecca Schreiber of Dickinson Law's Admissions and Financial Aid Office, spoke with Kelley McCord, a PSU employee who works in the PSU Office of Student Financial Services and who was aware of Ms. Tshudy's repeated outreach to PSU's Bursar's Office. *See* Conway Decl. at ¶ 27 and Krauss Decl. at ¶11. Ms. McCord relayed to Ms. Schreiber that her impression was that Ms. Tshudy was attempting to convince her to reinstate the scholarship regardless of whether it was appropriate to do so. *Id.*

On June 7, 2022, Dean Conway again emailed Ms. Tshudy and advised that she had confirmed that Ms. Tshudy had contacted PSU's Bursar and Student Financial Services on April 6, 2022 and informed them that her scholarship had been "removed in error." *See* Conway Decl. at ¶ 28. At that time, Dean Conway again instructed Ms. Tshudy to refrain from communicating

to PSU and Dickinson Law employees that there was an administrative mistake regarding the revocation of her scholarship as this was inaccurate. *Id.* At no time did Dean Conway instruct Ms. Tshudy that she was "forbidden to discuss" any information "with any PSU employees" as she alleges in her Complaint. *See* Conway Decl. at ¶ 29. To the contrary, Dean Conway's instruction was that Ms. Tshudy should not make misstatements about the circumstances under which her scholarship was revoked. *Id.*

At present, Trisha Tshudy's enrollment is as "matriculated student" in PSU's enrollment database, but she is not eligible to register for classes because of the Bursar's Account Delinquent hold on her account as a result of her tuition balance. *See* Krauss Decl. at ¶ 12.

(i)     **Relevant Procedural Background and Current Posture**

On August 21, 2022, Ms. Tshudy initiated the present action by filing a Complaint against PSU, purporting to assert three causes of action seeking compensatory damages as well as undefined injunctive relief. *See* ECF No.1. The three causes of action are untitled, and the related allegations are confusing, making it difficult to discern the exact nature of Ms. Tshudy's claims. However, PSU's best efforts to understand the Complaint are as follows: Ms. Tshudy has asserted a due process violation primarily based on some combination of her lack of legal counsel at the Honor Code Hearing and/or the use of Turnitin (*i.e.,* an internet-based plagiarism detection service) as evidence of her plagiarism. *See* ECF No. 1 First Cause of Action at p. 7. In addition, Ms. Tshudy asserts a claim of discrimination under the Americans with Disabilities Act (the "ADA") based on Dickinson Law requiring her to take her Fall 2021 Exams on campus. *See* ECF No.1 Second Cause of Action at p. 8. Finally, Ms. Tshudy also appears to allege a First Amendment and Civil Rights Act violation related Dean Conway's June 7, 2022 email asking Ms. Tshudy not to make misstatements about the circumstances under which her scholarship was revoked. *See* ECF No. 1 Third Cause of Action at p. 9. The Complaint contains no allegation that

denies the accusation of plagiarism. *See* ECF No. 1 *generally*.

On August 22, 2022, Ms. Tshudy filed a "Motion for a Permanent and/or Preliminary Injunction" which this Court promptly denied without prejudice as (among other things) it did "not define the scope of the injunction sought, or what action she seeks to enjoin." *See* ECF Nos. 2 and 9 (FN 1). On August 30, 2022, Ms. Tshudy filed an "Amended Motion for A Permanent and/or Preliminary Injunction" and Supporting Memorandum of Law (collectively, the "Amended Motion for Injunction") requesting that this Court enter an order enjoining PSU from "taking any action barring plaintiff from completing her third year as a law student at Dickinson Law School of Pennsylvania State University or revoking her scholarship" and also ordering that "Plaintiff is to be immediately reinstated in Dickinson Law School of the Pennsylvania State University in her third year to complete all requirements for graduation…" *See* ECF No. 10 Proposed Order.

On September 1, 2022, this Court set a hearing on Mr. Tshudy's Amended Motion for Injunction for September 7, 2022 which was then rescheduled to September 14, 2022. PSU filed a Motion to Transfer this matter to the Middle District of Pennsylvania under 28 U.S.C. §1404(a) on September 2, 2022, which is currently pending.

**3.   LEGAL STANDARD**

The standard for whether a court should issue preliminary injunctive relief is: (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of relief; (3) whether granting preliminary relief will not result in even greater harm to the other party; and (4) whether granting preliminary relief will be in the public interest. *See Acosta, Inc. v. Navitsky*, Civil Action No. 17-3282, 2018 WL 1251640, *4 (E.D. Pa. 2018).[2] The Third Circuit has held that these are to be weighed as factors, rather than

---

[2] In deciding whether to grant a permanent injunction, the district court considers basically the same factors including: (1) whether the moving party has shown *actual* success on the merits; (2) whether the moving

applied like elements. *Id*. *citing to Reilly v. City of Harrisburg,* 858 F.3d 173, 179 (3d Cir. 2017).

The movant must, as a threshold matter, establish the two "most critical" factors: likelihood of success on the merits and irreparable harm. *See Reilly at* 179. Under the first factor, the movant must show that "it can win on the merits." *Id.* For the second factor, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. *Id.* If these "gateway factors" are satisfied, then the court should consider the third and fourth factors: the potential for harm to others if relief is granted, and whether the public interest favors injunctive relief. *Id.* at 176, 179. The court must then balance all four factors to determine, in its discretion, whether the circumstances favor injunctive relief. *Id.* at 179.

A moving party "bears a heavy burden on a motion for a preliminary injunction." *Punnett v. Carter*, 621 F.2d 578, 588 (3d Cir. 1980). Both the Third Circuit and the Supreme Court have described the remedy supplied by a preliminary injunction as an "extraordinary remedy." *See Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) ("A preliminary injunction is an 'extraordinary and drastic remedy' . . . it is never awarded as of right.") (*internal citations omitted*); and *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (A preliminary injunction is an "extraordinary remedy" which should be granted only in limited circumstances.) Furthermore, courts are especially wary of ordering preliminary relief that – as here - seeks a mandatory injunction, "*i.e.,* one that orders a responsible party to 'take action.'" *See Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 484 (1996). Applications for mandatory injunctions are

---

party will be irreparably harmed by the denial of the requested injunction; (3) whether granting the permanent injunction will result in even greater harm to the defendant; and (4) whether the injunction would be in the public interest. *See Shields v. Zuccarini,* 245 F.3d 476, 482 (3d Cir. 2001). Thus, the legal factors and analysis applied to Ms. Tshudy's request for a preliminary injunction are substantively the same for her additional/alternative request for a permanent injunction.

subjected to close scrutiny. *United States v. City of Philadelphia*, No. 06-4592, 2006 WL 3922115, at *1 (E.D. Pa. Nov. 7, 2006).

4.    **ARGUMENT**

(a)    **Ms. Tshudy Has Not (and Cannot) Establish a Likelihood of Success on the Merits**

As a threshold matter, Ms. Tshudy must establish a likelihood of success on the merits of her claims in order to obtain an injunction. *See Camacho Lopez v. Lowe*, 452 F. Supp. 3d 150, 157 (M.D. Pa. 2020). Under this first factor, Ms. Tshudy must show that she "can win on the merits." *Id.* Since Ms. Tshudy cannot establish or demonstrate any likelihood of success on her asserted claims, her request for an injunction (preliminary or permanent) fails as a matter of law.

(i)    **Plaintiff Cannot Prevail on her Due Process Claim**

Ms. Tshudy asserts in her first cause of action a "violation of plaintiff's due process rights when Penn State conducted an honor code hearing concerning alleged plagiarism by plaintiff." *See* ECF No. 1 at ¶27. The specifics of her alleged due process violations are articulated in varying ways in her Complaint and the Amended Motion for Injunction but generally include that she was "was not given counsel at the hearing," that she was "not allowed to appropriately cross-examine her accusers," that evidence from the Turnitin similarity checker was "illegally accepted" and she was "forced to confront a so-called similarity checker…" *See* ECF No. 1 at ¶27-35, ECF No. 10 at ¶16(f) and p. 5-6. Ms. Tshudy provides no case citations or legal authority supporting her allegations that she suffered from due process violations at the Honor Code Hearing.

To state a procedural due process claim under Section 1983 in the context of discipline hearing in educational institutions, a plaintiff must show "(1) a deprivation of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *See Park v. Temple*

*University*, Civil Action No., 16-5025, 2019 WL 1865060, *10 (E.D. Pa. April 25, 2019) (*internal citations and quotations omitted*). "Due process is a flexible concept and the process due in any situation is to be determined by weighing (1) the private interests at stake, (2) the governmental interests at stake, and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards." *See Palmer by Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989).[3] This District Court has cautioned:

> …when reviewing due process rights of students in state universities, courts are generally ill-equipped to review subjective academic appraisals of educational institutions, and the Supreme Court admonished courts to permit university faculties a wide range of discretion in making judgments as to the academic performance of students. We do not sit as a review committee on the merits of [a university's] disciplinary decision. We examine whether the requirements of procedural due process are met in [the University's] disciplinary proceedings.
>
> The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner by, in the area of school discipline, an impartial decisionmaker.[4]

*Park,* 2019 WL at *10 *(internal citations and quotations omitted*).

In *Johnson v. Temple University*, Civil Action No. 12-515, 2013 WL 5298484, *10 (E.D. Pa. Sept. 19, 2013) a student alleged Temple University violated his due process rights by, among other things, failing to allow him to have an attorney or cross-examine witnesses at a hearing related to his violation of Temple's Student Code of Conduct and revoking his football scholarship. This District Court ruled that where the student had received email notice from Temple University's Program Coordinator informing him that he had been charged with violating Temple

---

[3] For example, in connection with a suspension of ten days or less, due process requires that a student be given oral or written notice of the charges against him and, if he denies them, an explanation of evidence and the opportunity to present his side of story. *See Eck v. Oley Valley School District*, 431 F. Supp .3d 607, 626 (E.D. Pa. 2019) *citing to Goss v. Lopez,* 419 U.S. 565, 576, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975). *See also Hewlette-Bullard of behalf of J.H-B. v. Pocono Mountain School District*, 522 F. Supp. 3d 78, 100 (M.D. Pa. 2021) (where a student is facing exclusion from classes, the student must be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.)

[4] Administrative decision-makers are presumed to be impartial. *See Park*, 2019 WL, at *10.

University's Student Code of Conduct (including disclosing the charges and evidence against him), where he was provided with an opportunity to present an opening statement, to submit questions to be asked to witnesses, to present witnesses, and to offer closing remarks at the hearing and where scholarship revocation was permitted by the Student Code of Conduct, there was no due process violation. *Id.* at 9-13.

Similarly, Ms. Tshudy was most certainly given the opportunity to be heard in a meaningful manner by an impartial decision-maker at the Honor Code Hearing. In accordance with Chapter Three of the Dickinson Law Honor Code, Ms. Tshudy attended the hearing where she testified, offered relevant evidence, was able to examine witnesses, including Associate Dean Williams and Professor Gould, and made closing remarks – all over the course of nearly five (5) hours. *See* Williams Decl. at ¶21. Furthermore, Ms. Tshudy has never questioned the impartiality of the Honor Code Hearing Board.

On the specific issues raised by Ms. Tshudy, this District Court has already held that "[a]ccused students do not have the right to be actively represented by an attorney at a disciplinary hearing" and that "the right to directly cross-examine witnesses is not a necessary part of due process in the student disciplinary context." *See Johnson*, 2013 WL at *10-11. *See also Hewlette-Bullard* 522 F. Supp. 3d at 100 (to satisfy due process before excluding a student from classes, a school district is not required to provide the student an opportunity to secure counsel, cross-examine witnesses, or call his own witnesses). Of note, the Honor Code provides that the accused student "has the right, at their own expense, to secure legal representation for any stage of the Honor Proceeding." *See* Conway Decl. at ¶ 8 and Williams Decl. at ¶8, Article 3.

Finally, Ms. Tshudy has provided no basis or legal support for her contention that the use of evidence related to the Turnitin similarity checker violated her due process rights. A student is not deprived of due process at an honor code hearing on the basis that he was denied the right to

20

have the hearing subject to judicial rules of evidence. *See Henson v. Honor Committee of U.Va.*, 719 F.2d 69, 74 (4th Cir. 1983). Accordingly, Ms. Tshudy is unable to demonstrate a likelihood of success on the merits relative to her due process cause of action.

      **(ii)**      **Plaintiff Cannot Prevail on her Discrimination/ADA Claim**

Ms. Tshudy asserts a "discrimination" claim against PSU in her Complaint as follows: "Penn State discriminated against Ms. Tshudy bu (sic) forcing her (sic) take her Fall 2021 examinations on campus to the detriment of her health." *See* ECF No. 1 at ¶41. The Memorandum of Law in Support of Ms. Tshudy's Amended Motion for an Injunction elaborates, "Dickinson discriminated against the plaintiff by violating her right to accommodations under the ADA, the very accommodations Penn State University agreed to and memorialized on which the plaintiff detrimentally relied. Plaintiff was required to take her online final exams on campus when such action was deleterious to her health." *See* ECF No 10 at p. 6. It is unclear from her Complaint and Amended Motion for Injunction what theory of liability Ms. Tshudy is asserting under the ADA (*e.g.,* disparate treatment, disparate impact, failure to make reasonable accommodations).[5]

To assert a disparate treatment cause of action under the ADA, a plaintiff must demonstrate: "(1) he is a qualified individual; (2) with a disability; (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *See Frazier v. Pennsylvania State University,* No. 4:21-cv-00350, 2022 WL 1570477, *7 (M.D. Pa. May 18, 2022). Claims alleging failure to accommodate under the ADA require a tripartite inquiry as follows: (1) whether the requested accommodation is reasonable; (2) whether it is necessary; and

---

[5] Since Ms. Tshudy has not mentioned or alleged facts supporting a disparate impact theory of liability, PSU is proceeding under the understanding that Ms. Tshudy has not asserted such a claim in this action.

(3) whether it would fundamentally alter the nature of the program. *See Berardelli v. Allied Services Institute of Rehabilitation Medicine,* 900 F.3d 104, 123 (3d Cir. 2018). Assuming *arguendo* for present purposes that Ms. Tshudy meets the requirements for qualified and disabled under the ADA, her allegation that PSU discriminated against her by "revoking her remote accommodation at the end of the semester and forcing her onto campus" is unsupportable. *See* ECF No. 10 at p.3. While Ms. Tshudy claims that she received accommodations from PSU allowing her to take her exams online [*See* ECF 10 at p. 3], this is simply not true.

Ms. Tshudy has not attached to her Complaint (or to her Amended Motion for Injunction) any evidence that she was granted an accommodation from Dickinson Law for remote test-taking. This absence is no omission as Ms. Tshudy never requested, nor did she ever receive, a remote test-taking accommodation from Dickinson Law at any point. *See* Dodge Decl. at ¶¶4-5.[6] Thus, Ms. Tshudy's entire discrimination claim is based on the demonstrably-false allegation that she had a remote test-taking accommodation and, therefore, it fails as a matter of law.

Even assuming Ms. Tshudy had requested a remote test-taking accommodation for her Fall 2021 Exams (which she did not) Ms. Tshudy would have to prove that such a request was reasonable and necessary to permit her meaningful participation, which she cannot do. *Id.* at 123. PSU is not required to provide every accommodation that is requested, only those that are reasonable. *See Berardelli*, 900 F.3d at 125 (a plaintiff may not insist on a particular accommodation if another reasonable accommodation was offered). In the present matter, Ms. Tshudy was offered and accepted several accommodations relative to her 2021 Fall Exams that fully addressed her concerns related to her alleged disability including 100% extended time to take

---

[6] Furthermore, to the extent Ms. Tshudy's Second Cause of Action could somehow be construed as a breach of contract relative to the breach of alleged agreed-to accommodations it also fails as a matter of law because Ms. Tshudy has failed to provide any evidence – or attach to her Complaint – any contract or agreement granting her a remote test-taking accommodation from Dickinson Law.

exams/quizzes *in a private room*, the ability to bring her service dog and permission to take breaks during exams that may require leaving the testing room. *See* Dodge Decl. at ¶¶4 and 23. Ms. Tshudy cannot claim that PSU acted unreasonably when it provided all accommodations requested. Her claim is founded on PSU's failure to provide an accommodation that was never requested.

### (iii)   Plaintiff Cannot Prevail on her First Amendment Claim

The third cause of action purportedly set forth in the Complaint is for "violation of Plaintiff's First Amendment rights as well as 42 USC 1983, the Civil Rights Act." *See* ECF No. 1 Complaint at ¶45. In her Amended Motion for Injunction, Ms. Tshudy specifically alleges, "Plaintiff's First Amendment rights were violated when she was instructed by Dean Conway not to discuss with any employees the Bursar's statement that her scholarship was illegally revoked…" (the "First Amendment Claim"). *See* ECF No. 10 at ¶16(e). In her Memorandum of Law in Support of the Amended Motion for Injunction, Ms. Tshudy elaborates:

> "When plaintiff learned from the Bursar's Office that her scholarship had been revoked without proper procedure, her First Amendment rights were then violated. She was instructed by Dean Conway not to speak with anybody on campus concerning what the Bursar had told her. Defendant retaliated and discriminated against plaintiff arising out of exercise of her rights as a disabled person.[7] The effectual refusal to allow financial services to communicate with the Plaintiff until the completion of the affirmative action review is retaliation."

*See* ECF No. 10 at p. 6. In light of her repeated references to retaliation and 42 U.S.C. ¶1983, PSU is proceeding under the assumption that Ms. Tshudy is attempting to assert a retaliation claim under the First Amendment to the United States Constitution, applied to state actors through 42 U.S.C. ¶1983, which has three elements: (1) constitutionally protected conduct; (2) retaliatory

---

[7] PSU is unclear regarding how Ms. Tshudy's alleged status as a disabled person relates to her First Amendment retaliation claim. Based on her Complaint and Amended Motion for Injunction, Ms. Tshudy's First Amendment claim is based on an alleged violation of her free speech rights, which does not implicate her status as an alleged disabled person.

action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *See Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

While not particularly clear, it seems that Ms. Tshudy is alleging that she has a constitutional right to speak with PSU and/or Dickinson Law employees (and also "anybody on campus") about "Bursar's statement that her scholarship was illegally revoked…" [*See* ECF No. 10 at ¶16(e)], and that PSU violated her First Amendment rights and retaliated against her by allegedly telling her not discuss this alleged statement of the Bursar with PSU/Dickinson Law financial services. *See* ECF No. 10 at p. 6. Once again, Ms. Tshudy's claim is fatally flawed – this time by the very documents she attaches to her Complaint.

No representative of PSU made the alleged statement to Ms. Tshudy. Indeed, the entirety of Ms. Tshudy's First Amendment claim is based on the June 7, 2022 email of Dean Conway attached to the Complaint as Exhibit B. Ms. Tshudy alleges the June 7, 2002 email from Dean Conway instructs Ms. Tshudy "not to discuss with any employees the Bursar's statement that her scholarship was illegally revoked…" *See* ECF No. 1 at ¶ 48 and ECF No. 10 at ¶16(e). However, this is not what the June 7, 2022 email actually states. As is clear from the face of the email, which is attached as Exhibit B to Ms. Tshudy's Complaint, the June 7, 2022 email rather states, "please refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of your scholarship." *See* ECF No. 1 Ex. B. In other words, Dean Conway merely requested that Ms. Tshudy stop misrepresenting to Penn State and/or Dickinson Law employees that her scholarship was revoked in error when it was not. The June 7, 2022 email does not constitute a retaliatory act as a matter of law, and therefore, Ms. Tshudy's First Amendment claim fails.

Added to the above, Ms. Tshudy's First Amendment claim is legally deficient as the key inquiry in determining "whether a cognizable First Amendment claim has been stated is whether the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *See Herman v. Hostrman,* Civil Action No. 1:11-cv-989, 2011 WL 4974184, *3 (M.D. Pa. Oct. 19, 2011) *citing to McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Thus, "*de minimis* responses to protected speech such as criticism, false accusations, or verbal reprimands do not rise to the level of actionable retaliation." *See Herman*, 2011 WL at *3 *citing to Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir.2003).

In *Revell v. City of Jersey City,* 394 Fed. Appx. 903 (3d Cir. 2010) (*unpublished*) the plaintiff (a police officer) asserted a First Amendment retaliation claim against the City of Jersey City, its police department and certain individual officers based on purported retaliatory conduct directed at her speech (*i.e.,* a letter writing campaign reporting alleged improprieties surrounding a city purchasing decision). The alleged retaliatory conduct alleged included, among other things, being told by one of the defendants/appellees to stop her letter-writing campaign. The Third Circuit affirmed the District Court's grant of summary judgment in favor of the defendants/appellee because "[t]he retaliatory conduct that [plaintiff/appellant] alleges is insufficient as a matter of law to deter a person of ordinary firmness from exercising her First Amendment rights" noting that "Courts have declined to find adverse action where the alleged retaliatory acts were criticisms, false accusations or verbal reprimands." *Id*. at 906 *citing to Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir. 2003). The Third Circuit found that the plaintiff/appellant's allegations of retaliation – including the instruction to stop her letter writing campaign – were the "equivalent to a few criticisms, admonishments, or verbal reprimands [and] do not rise to the level of a campaign of retaliatory harassment." As best, the June 7, 2022 email was a *de minimus* admonishment prompted

by Ms. Tshudy's actions in making inaccurate statements and, therefore, cannot constitute a retaliatory act for purposes of a First Amendment retaliation claim.

**(b)** **Ms. Tshudy Cannot Establish Irreparable Harm**

The Third Circuit has "repeatedly insisted that the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000). The "risk of irreparable harm must not be speculative." *Id.* at 488 (citation omitted). Indeed, "[a] preliminary injunction may not be based on facts *not* presented at a hearing, or not presented through affidavits, deposition testimony, or other documents, about the particular situations of the moving parties." *Id.* at 487. Moreover, "[i]n order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following a trial." *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).

Ms. Tshudy's Amended Motion for Permanent and/or Preliminary Injunctions seeks to enjoin PSU from revoking her scholarship and requests that Ms. Tshudy be "immediately reinstated in Dickinson Law School of the Pennsylvania State University in her third year to complete all requirements for graduation…" *See* ECF No.10 Proposed Order. Ms. Tshudy further claims that she "will be irreparably harmed, if she is not allowed to attend her third year of law school, because that will keep plaintiff from graduation and taking the bar exam." *See* ECF No. 10 p. 4. As a result, she claims that her "career as a lawyer will be terminated" and "no amount of money can compensate plaintiff for the loss of the status and satisfaction as an attorney, or the ability to right wrongs in the public interest. *Id.*

However, Ms. Tshudy's scholarship has already been revoked and Ms. Tshudy is still eligible to attend Dickinson Law if she pays tuition. *See* Conway Decl.at ¶¶ 21-22. Thus, the so-

called "irreparable" harm Plaintiff is claiming to suffer (although she does not properly articulate it in her moving papers) is that she cannot attend Dickinson Law for *at no cost to her* due to the loss of her scholarship which has resulted in a self-inflicted delay in her education. However, this Court has already determined that the loss of scholarship funds and/or a delay in education do not constitute irreparable harm for purposes of a preliminary injunction.

In *Doe v. University of Sciences,* Civil Action No. 19-358, 2020 WL 5211028 (E.D. Pa. Sept. 1, 2020) this District Court denied an expelled student's motion for preliminary injunction seeking reinstatement because the student failed to demonstrate irreparable harm. Like Ms. Tshudy, the student claimed he would suffer irreparable harm in the absence of an injunction in the form of (among other things) the loss of a scholarship and the alleged loss of his ability to pursue his chosen career. However, the District Court ruled that "[a]ny loss in scholarship money can undeniably be compensated by monetary damages." *Id*. at *4. The District Court further held that if the expelled student were to prevail on his underlying claims and be reinstated, his only suffered harm would be a delay in resuming his education which also does not constitute irreparable harm as it can be compensated with money damages. *Id*. at *4 *citing to Mahmood v. Nat'l Bd. of Med. Examiners,* No. 12-1544, 2012 WL 2368462, *5 (E.D. Pa. June 21, 2012) ("[D]elays in … education services do not constitute irreparable harm.") *See also Howe v. Pennsylvania State University – Harrisburg*, Civil Action No. 1:16-0102, 2016 WL 393717, *6 (M.D. Pa. Feb. 2, 2016) (suspended student's claim of lost scholarships and a delay in his education did not constitute irreparable harm for purposes of an injunction as he can be compensated for those alleged harms with monetary damages). Thus, Ms. Tshudy has failed to demonstrate that she will suffer irreparable harm absent the issuance of the requested injunction as her alleged suffered harm is compensable via monetary damages in the unlikely event her claims are deemed valid. The Amended Motion for Injunction should, therefore, be denied. *See In re Arthur Treacher's*

27

*Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982) ("[A] failure to demonstrate irreparable injury[ ] must necessarily result in the denial of a preliminary injunction.")

### (c)      The Balance of Harms Weighs Heavily Against Issuing an Injunction

Since Ms. Tshudy has failed to demonstrate either a likelihood on the merits or irreparable harm, there is no need for the Court to even consider the remaining factors. *See Noakes v. Case Western Reserve University*, Case No. 1:21-cv-1776, 2021 WL 4441608, *12 (N.D. Ohio Sept. 28, 2021) (where plaintiff failed to demonstrate either a likelihood of success on the merits or irreparable harm, the Court need not consider the remaining factors for a preliminary injunction). Nevertheless, in balancing the equities, "the Court must consider the potential injury that plaintiff will suffer in the absence of the injunction and the potential injury of the defendant in the presence of the injunction." *See Revzip, LLC v. McDonnell*, Case No. 3:19-cv-191, 2019 WL 6701835, *8 (W.D. Pa. Dec. 9, 2019) *citing Issa v. Sch. Dist. of Lancaster,* 847 F.3d 121, 142 (3d. Cir. 2017). The moving party "must prove that the balance of equities tips in its favor." *See Synthes, Inc. v. Gregoris*, 228 F. Supp. 3d 421, 445 (E.D. Pa. 2017).

As to the balance of harms factor, Ms. Tshudy's position is limited to the following statement: "[g]ranting of a preliminary injunction will cause little or no harm to defendant, and plaintiff will otherwise be barred from becoming an attorney." *See* ECF No. 10 p. 8. However, as discussed above, Ms. Tshudy is not barred from becoming an attorney as she can complete her third year at Dickinson Law upon payment of tuition. In reality, the balance of harms weighs in favor of denying the requested injunction because the issuance of preliminary relief will encourage, promote, and result in students seeking injunctive relief any time they are unhappy with the outcome of a disciplinary proceeding – even if that student admits to the violation.

**(d)     The Public Interest Weighs Against Issuing an Injunction**

The final requirement for a movant to obtain a preliminary injunction is to demonstrate that granting preliminary relief will be in the public interest.  *See Acosta,* 2018 WL at *4. Indeed, "[f]ocusing on this factor is another way of inquiring whether there are policy considerations that bear on whether the order should issue." *See* 11A Fed. Prac. & Proc. Civ. § 2948.4 (3d ed.). Ms. Tshudy asserts that granting the requested injunction is in the public interest because "plaintiff did not receive due process and she has already demonstrated, through her receipt of a scholarship, her ability as a potential attorney which would benefit the public." *See* ECF No. 10 at p. 8. Ms. Tshudy cites no legal authority or case law supporting this argument. Furthermore, and once again, Ms. Tshudy can still become an attorney. Thus, even assuming *arguendo* that Ms. Tshudy becoming an attorney would somehow serve the public interest, it is not relevant to the present request for an injunction since she can still attend law school if she so desires. Rather, PSU submits that public policy is served in denying the requested injunction. There is a strong public interest in a university's ability to sanction policy violators in order to maintain academic standards and professional integrity. Moreover, a university's inability to issue such discipline, except at prohibitive costs, will disrupt the educational process.

**5.     CONCLUSION**

Defendant, The Pennsylvania State University, respectfully requests that this Court deny Plaintiff's Amended Motion for a Permanent and/or Preliminary Injunction.

Dated:  September 9, 2022                    Respectfully submitted,

                                            **BUCHANAN INGERSOLL & ROONEY
                                            PC**

                                            By*:   /s/ Geoffrey F. Sasso*
                                                 Geoffrey F. Sasso (Pa. ID 202936)
                                                 George Morrison (Pa. ID 203223)
                                                 Erin Lucas Hamilton (Pa. ID 93852)
                                                 Two Liberty Place
                                                 50 S. 16th Street, Suite 3200
                                                 Philadelphia, PA 19102
                                                 P: 215-665-8700
                                                 F: 215-665-8760
                                                 geoff.sasso@bipc.com
                                                 george.morrison@bipc.com
                                                 erin.hamilton@bipc.com

                                            *Attorneys for Defendant, The
                                            Pennsylvania State University*

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of September, 2022, a true and correct copy of the Defendant The Pennsylvania State University's Response and Memorandum of Law in Opposition to Plaintiff's Amended Motion for a Permanent and/or Preliminary Injunction was filed by the Court's Electronic Case Filing System and is available for viewing and downloading from the ECF system. The below was served via ECF:

William C. Reil, Esquire
Law Offices of William C. Reil
1420 Locust Street, Suite 420
Philadelphia, PA 19102
*Attorneys for Plaintiff, Trisha Tshudy*

<u>/s/ Geoffrey S. Sasso</u>
Geoffrey F. Sasso, Esquire
*Attorney for Defendant,*
*The Pennsylvania State University*