IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRISHA TSHUDY,<br>    Plaintiff,<br><br>   v.<br><br>PENNSYLVANIA STATE UNIVERSITY,<br>    Defendant. | CIVIL ACTION<br><br><br><br><br>NO.  22-3336 |

## MEMORANDUM OPINION

Plaintiff Trisha Tshudy filed this lawsuit against Pennsylvania State University ("Penn State"), alleging violations of her due process rights, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 1983 stemming from the revocation of her scholarship to attend Penn State's Dickinson Law school.  Penn State now moves to transfer this action under 28 U.S.C. § 1404(a) to the Middle District of Pennsylvania, where Dickinson Law is located.  For the reasons that follow, Defendant's Motion to Transfer is granted.

### I.     BACKGROUND

Tshudy recently completed her second year of law school and would have begun her third year at the end of August.  However, after the submission of her Fall 2021 exams, one of her professors accused Tshudy of plagiarizing a final paper.  Following this accusation, an honor code hearing was held in January 2022 on Dickinson Law's Carlisle, Pennsylvania campus.  Carlise is located in Cumberland County, in the Middle District of Pennsylvania.  Tshudy was found to have violated the school's honor code, and the law school revoked her scholarship.

Tshudy claims that the use of the plagiarism checker Turnitin, her lack of counsel, and her inability to "appropriately cross-examine her accusers" and "confront the evidence and witnesses against her" during the hearing violated her due process rights.

She also claims that Penn State violated her right to reasonable accommodations under the ADA.  Tshudy claims to suffer from Neurological Lyme Disease and related co-infections and immunological conditions.  Due to her illness, Tshudy received past accommodations from Penn State, including permission to attend classes remotely.  However, she was required to take her Fall 2021 exams in-person on Dickinson Law's campus, a requirement that she alleges caused her to develop a severe illness during the exam period and submit an "incomplete" paper.

Finally, after Tshudy called the University Bursar's Office to argue that her scholarship had been improperly rescinded, she received an email from Dickinson Law's Dean, Danielle Conway, directing her to refrain from communicating to employees of Penn State or Dickinson Law that her scholarship had been revoked due to an administrative mistake.  According to Tshudy, this email constituted "a clear attempt by the law school to silence" her in violation of the First Amendment and 42 U.S.C. § 1983.

Tshudy filed her Complaint in the Eastern District of Pennsylvania on August 21, 2022, one day before Dickinson Law's fall semester classes began.  On her Complaint, she listed an Annville, Pennsylvania address, which is in the Middle District.  Her counsel later represented to the Court that Tshudy now lives in New Jersey.  On August 21, Plaintiff also filed a Motion for a Permanent and/or Preliminary Injunction seeking to "enjoin[ Penn State] from revoking plaintiff's scholarship."  This motion was denied on procedural grounds.  On August 30, Tshudy filed another Motion for a Permanent and/or Preliminary Injunction.  Three days later, Penn State moved to transfer this action from the Eastern District to the Middle District.

## II.  ANALYSIS

### A.  Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." The burden of showing a need for transfer is on the movant and "in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citation and internal quotation marks omitted).

Courts apply a two-step analysis to motions to transfer under Section 1404(a). "First, both the original venue and the requested venue must be proper." *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 196 (E.D. Pa. 2008) (citing *Jumara*, 55 F.3d at 878). Second, if venue is proper in both districts, "the Court is required to undertake a balancing test" to determine whether the "interests of justice" warrant transfer. *Id.* at 197 (quoting *Jumara*, 55 F.3d at 879). This second step requires balancing both private and public interests. These private interests include:

> [1] [P]laintiff's forum preference as manifested in the original choice, [2] the defendant's preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as indicated by their relative physical and financial condition, [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora, and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara*, 55 F.3d at 879 (citations omitted).

The public interests include:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 880-81 (citations omitted).

### B. Discussion

Penn State concedes that the Eastern District of Pennsylvania is "likely a proper venue for this action," but argues that the Middle District of Pennsylvania is "the more appropriate

forum." Venue is proper in judicial districts where (1) "any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "a substantial part of the events or omissions giving rise to the claim occurred"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

As an "educational corporation," *Medina v. Haas*, 2021 WL 1088343, at *2 (E.D. Pa. Mar. 22, 2021), Penn State is deemed a resident for venue purposes of any district in Pennsylvania "within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State. . . ." 28 U.S.C. § 1391(d). Penn State has campus locations in both the Eastern District of Pennsylvania and the Middle District; its Dickinson Law school, the institution central to this action, is located in the Middle District. The unlawful acts alleged by Tshudy—which concern on-campus testing accommodations, Dickinson Law School honor code proceedings, and communications made by Dickinson Law personnel—occurred in the Middle District. Under 28 U.S.C. § 1391(b)(1) and (b)(2), venue would therefore be proper in either the Eastern District or the Middle District, and the Court must apply the balancing test outlined in *Jumara*.

### i.     *Private Interest Factors*

Here, the private interest factors weigh in favor of transfer. As to the parties' preferences, Tshudy wishes to litigate in the Eastern District and Penn State wishes to litigate in the Middle District. Although the plaintiff's choice of forum is typically a "paramount consideration," it is afforded less deference where, as here, the plaintiff does not reside in the district and "none of the operative facts underlying the claim occurred there." *See Synthes, Inc. v. Knapp*, 978 F.Supp.2d 450, 459 (E.D. Pa. 2013); *Askerneese*

*v. NiSource, Inc.*, 2013 WL 1389750, at *2 (E.D. Pa. Apr. 4, 2013). The first two factors, therefore, are in equipoise.

The third factor—whether the claim arose elsewhere—weighs strongly in favor of transfer. *See Martin v. McHugh*, 2014 WL 5801412, at *4 (E.D. Pa. Nov. 7, 2014) (granting motion to transfer from the Eastern District to the Middle District where "none of the events underlying" plaintiff's claim occurred in the Eastern District). Plaintiff does not allege that any underlying actions occurred in the Eastern District. The honor code hearing that resulted in the revocation of her scholarship took place in Carlisle; Dickinson Law's Fall 2021 testing policy required her to take her exams on-campus in Carlisle; and the email from Dean Conway requesting that Tshudy limit her communications with Penn State employees included a Carlisle office address in the signature block. All the relevant underlying events appear to have taken place in Carlisle, or at the very least within the Middle District, and Plaintiff has provided no information to the contrary.

The fourth factor—convenience of the parties—is neutral. Penn State makes no argument on this factor. Tshudy argues that the Eastern District is a more convenient forum because her counsel is based in Philadelphia. In support of this argument, she cites only an Eastern District of California case noting that transfer from California to Illinois might have been burdensome for a plaintiff who had previously been proceeding *pro se* because it would likely require him to find new counsel. *See DeFazio v. Hollister Emp. Share Ownership Tr.*, 406 F.Supp.2d 1085, 1090 (E.D. Cal. 2005). *DeFazio*, however, acknowledged that "courts have not considered the location of the parties' counsel as a factor for transfer." *Id.* In fact, Third Circuit courts have explicitly excluded this consideration from their transfer analyses. *See, e.g.*, *Solomon v. Cont'l Am. Life Ins. Co.*,

472 F.2d 1043, 1047 (3d Cir. 1973) ("The convenience of counsel is not a factor to be considered."); *Leatherman v. Cabot Oil & Gas Corp.*, 2013 WL 1285491, at *3 (E.D. Pa. Mar. 29, 2013) ("While plaintiff's counsel is based in the Eastern District, '[t]he convenience of counsel is not a factor to be considered.'"); *Grafton v. Jefferson Cap. Sys., LLC*, 2011 WL 4807893, at *2 n.1 (M.D. Pa. Oct. 11, 2011) ("The court notes that [plaintiff's] counsel resides in Philadelphia, Pennsylvania, located within the Eastern District of Pennsylvania. . . . However, the convenience of counsel is not relevant to the court's consideration of a motion to transfer venue under 28 U.S.C. § 1404."). Beyond the need to compensate her counsel for his travel time, Tshudy has not explained why her financial and physical condition, while allowing her to travel to Philadelphia from either the Middle District or the District of New Jersey, would impede her from traveling to the Middle District.

The fifth factor—the convenience of the witnesses—weighs slightly in favor of transfer. Although both parties argue that this factor supports their position, neither makes entirely convincing arguments. This factor is considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. Penn State argues that this factor weighs in favor of transfer as many non-party witnesses are likely either employees or students of Dickinson Law who live or work in the Middle District. Because Carlisle is over 100 miles from Philadelphia, Penn State argues these witnesses may be beyond the Eastern District's subpoena power. *See* Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person. . . ."). However, because courts may also "command

attendance at trial 'within the state where the person resides, is employed, or regularly transacts business in person' as long as doing so would not require the witness to 'incur substantial expense,'" *McMahon v. Arsenberger Trucking Co. Inc.*, 2017 WL 3740643, at *5 (E.D. Pa. Aug. 29, 2017) (quoting Fed. R. Civ. P 45(c)(1)(B)(ii)), the 100-mile rule would not necessarily work against witnesses living or working in the Middle District appearing at a trial in the Eastern District, as *Jumara* would require.

Tshudy, in turn, argues that that the convenience of the witnesses factor weighs against transfer because one potentially key witness, the Dickinson Law adjunct professor who initially accused her of plagiarism, is also employed by a law firm in the Eastern District. But this argument simply establishes that for this one witness both forums are equally convenient, not that the Eastern District is the better forum overall.

The final factor—the location of books and records—weighs slightly in favor of transfer. The analysis of this factor is also "limited to the extent that the files could not be produced in the alternative forum," *Jumara*, 55 F.3d at 879, and "technological advances of recent years have significantly reduced" its weight, *Lomanno v. Black*, 285 F.Supp.2d 637, 647 (E.D. Pa. 2003). To the extent that the factor is relevant, Penn State asserts, and Tshudy does not refute, that all documents related to Tshudy's claims are physically located in the Middle District.

   ii.  ***Public Interest Factors***

On balance, the public interest factors likewise weigh in favor of transfer. The practical considerations of trial factor weighs in favor of transfer; many, if not all, of the witnesses and relevant documents are likely in the Middle District. *See Costello v. Novartis Pharms. Corp.*, 2006 WL 1479800, at *3 (E.D. Pa. May 25, 2006) (holding that the "practical considerations of

trial" factor weighed in favor of transfer to the Middle District because witnesses lived near Scranton, even if they could also be available at a trial in Philadelphia). The Middle District also has a greater local interest in the case, as it concerns alleged rights violations by a law school based in that district. The court congestion factor weighs against transfer as, according to federal caseload statistics cited by Penn State, the Middle District had more pending cases per active judgeship and a longer median time to disposition or trial of civil actions than the Eastern District as of June 30, 2022. *See* Admin. Off. U.S. Courts, *United States District Courts – National Judicial Caseload Profile* 16-17 (2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.[1] The final three factors—the enforceability of the judgment, the public policies of the districts, and the familiarity of the trial judge with the applicable state law—were not addressed by the parties and will be considered neutral between the districts.

      Overall, therefore, both the public and private interest factors weigh in favor of transfer. This result is unsurprising given that the litigation has no connection to the Eastern District other than three slight and tenuous links put forth by Plaintiff: the presence of Penn State campuses Plaintiff neither attended, nor alleges bear any relation to her claims; the location of Plaintiff's counsel, which is not a proper consideration in a transfer analysis; and the existence of a potential witness who is employed in both districts. The Defendant's motion is granted, and the case is transferred to the Middle District of Pennsylvania. An appropriate order follows.

---

[1] Penn State argues that the National Judicial Caseload Profile report supports transfer because it shows that the Eastern District has more total pending cases than the Middle District. Although this is true, the more relevant statistics are the number of cases per judgeship and time to disposition or trial. *See, e.g., United States ex rel. Hollander v. MTD Prods., Inc.*, 2011 WL 3501749, at *3 (E.D. Pa. Aug. 9, 2011).

**BY THE COURT:**

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**