**394 Fed.Appx. 903**
This case was not selected for publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of Appeals 3rd Cir. App. I, IOP 5.1, 5.3, and 5.7.
United States Court of Appeals,
Third Circuit.

Mary REVELL, Appellant,
v.
CITY OF JERSEY CITY; Jersey City Police Department; Hugh Donaghue; Daniel Halleran; Jeremiah Healy; Edward McGreevy; Kenneth Mount; Robert Troy; and John Does 1–10; Police Officer Paul Jensen.

No. 09–4207.
|
Submitted Under Third Circuit L.A.R. 34.1(a) Sept. 14, 2010.
|
Opinion Filed: Sept. 17, 2010.

**Synopsis**
**Background:** Police officer sued city, city police department, and individual officers, asserting First Amendment retaliation claim and claim under New Jersey Conscientious Employee Protection Act (CEPA). The United States District Court for the District of New Jersey, Joseph A. Greenaway, Jr., J., 2009 WL 3152110, granted summary judgment for defendants. Officer appealed.

**Holdings:** The Court of Appeals, Garth, Circuit Judge, held that:

[1] purported retaliatory conduct directed at officer due to her speech was not adverse action supporting First Amendment retaliation claim;

[2] officer did not show that her protected speech was substantial factor in causing alleged retaliation; and

[3] officer failed to demonstrate adverse action necessary to maintain claim under CEPA.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (3)

[1]  **Constitutional Law** ⌕ Police and other public safety officials
**Municipal Corporations** ⌕ Grounds for removal or suspension

Purported retaliatory conduct directed at city police officer due to her letter-writing campaign reporting alleged improprieties surrounding city purchasing decision was insufficient to deter person of ordinary firmness from exercising her free speech rights, and therefore officer failed to establish adverse action supporting her First Amendment retaliation claim, where officer alleged that her brothers were threatened, she was told on one occasion to stop her letter-writing efforts, she was directed to undergo random drug test and to furnish report explaining absence, was criticized by fellow officers, and she was transferred from property room assignment to patrol duty. U.S.C.A. Const.Amend. 1.

19 Cases that cite this headnote

[2]  **Constitutional Law** ⌕ Police and other public safety officials
**Municipal Corporations** ⌕ Grounds for removal or suspension

Police officer asserting First Amendment retaliation claim did not make requisite showing that her protected speech, in which she complained of alleged improprieties surrounding city purchasing decision, was substantial factor in any negative or adverse conduct directed toward her where there was no evidence that threats against officer's brothers occurred in retaliation for officer's conduct, that officer's random drug test was retaliatory, or that officer's transfer, which occurred more than one year after she was told to stop writing complaint letters, was due to her speech. U.S.C.A. Const.Amend. 1.

*7 Cases that cite this headnote*

[3] **Municipal Corporations** — Grounds for removal or suspension
**Public Employment** — Reporting or Opposing Wrongdoing; Whistleblowing

City police officer failed to demonstrate adverse action necessary to maintain claim under New Jersey Conscientious Employee Protection Act (CEPA) where allegedly retaliatory actions complained of, which included criticisms and transfer, did not impact officer's compensation or rank and were not virtually equivalent to discharge. N.J.S.A. 34:19–2.

*3 Cases that cite this headnote*

**\*904** Appeal from the United States District Court for the District of New Jersey (No. 06–cv–03210), District Court Judge: Honorable Joseph A. Greenaway, Jr.

Before: RENDELL, FISHER and GARTH, Circuit Judges.

## OPINION

GARTH, Circuit Judge:

**\*\*1** Appellant Mary Revell ("Revell") appeals from the District Court's grant of summary judgment in favor of appellees the City of Jersey City, its police department, and certain individual officers. The District Court granted appellees' motions for summary judgment as to all claims; Revell appeals from the District Court order with respect to her First Amendment retaliation claim and her claim pursuant to the New Jersey Conscientious Employee Protection Act ("CEPA"). For the reasons that follow, we will affirm.

**\*905** I.

We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we set forth only those facts necessary to our analysis.

Revell, a Jersey City police officer, claimed that the City of Jersey City ("City") was seeking to purchase a new police radio communication system without open and competitive bidding and without the publication of bid specifications. It was her understanding that the City was steering the contract to a pre-selected company without considering other companies who could provide a more efficient and cost-effective system.

Revell asserted that improprieties were being committed, and wrote letters of complaint to Acting Governor of New Jersey Richard Codey, to the U.S. Attorney's Office for the District of New Jersey, and to other public figures. In her letters, Revell alleged improprieties such as violations of state law and grant policies, and implored the offices to look into these matters. She wrote the letters on her own personal stationery, did the work outside the office, and never billed for any of the time. She signed certain of the letters "Mary Revell, Private Citizen."

Revell alleges that the appellees retaliated against her because of her letter writing campaign. Her allegations of retaliatory conduct may be summed up as follows: Revell's brothers were threatened; appellee Troy told her one time to stop the letters; she was directed to undergo a random drug test; she was directed to furnish a report explaining why she was absent one day; appellee Mount called her a "bad catalyst"; appellee McGreevy called her "half a cop"; Revell was transferred from the Property Room to a new assignment on patrol duty on January 23, 2006. This transfer did not affect a cut in rank, pay, or hours.

The District Court, in granting summary judgment to the defendants, held that certain of Revell's letters (speech), limited to the letters sent to various public officials, were protected by the First Amendment. *Revell v. City of Jersey City,* No. 06–3210, 2009 WL 3152110, at \*4 (D.N.J. Sept.28, 2009). The court determined that Revell's "letter-writing campaign does not fall within the ambit of her official duties." *Id.* at \*5. The court nonetheless concluded that Revell's First Amendment retaliation claim failed, because there was "no evidence supporting Plaintiff's claims that she suffered retaliation." *Id.* The court held: "Plaintiff's transfer and the alleged comments and behavior directed towards her do not amount to punitive conduct that would deter a person of ordinary firmness from exercising her free speech rights," and that the lack of adverse employment action was fatal to Revell's claims. *Id.* at \*6, 8.

## II.

**\*\*2** The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over orders granting summary judgment. *Lauren W. v. DeFlaminis,* 480 F.3d 259, 265 (3d Cir.2007). We affirm those orders if our review reveals that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 265–66. We review the facts "in the light most favorable to the non-moving part[y], and draw all reasonable factual inferences in" her favor. *Id.* at 266.

## III.

To state a First Amendment retaliation claim, a plaintiff must show that (1) the activity in question was protected by the First Amendment and (2) the protected **\*906** activity was a substantial factor in the alleged retaliatory action. *Hill v. Borough of Kutztown,* 455 F.3d 225, 241 (3d Cir.2006); *Hill v. City of Scranton,* 411 F.3d 118, 125 (3d Cir.2005). The first factor is a question of law; the second factor is a question of fact. *Borough of Kutztown,* 455 F.3d at 241.

To meet the burden of showing retaliatory action under the second factor, a plaintiff must first show that the defendants' action was "sufficient to deter a person of ordinary firmness from exercising" his or her rights. *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir.2006); *Lauren W.,* 480 F.3d at 267. She must then show that her protected activity was a substantial factor in causing this conduct. See *Lauren W.,* 480 F.3d at 259. "To establish the requisite causal connection, a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Id.* Plaintiff may also show causation "from the evidence gleaned from the record as a whole." *Id.*

Assuming, *arguendo,* that appellant engaged in protected activity, she fails to demonstrate an adverse action taken against her, or that the protected activity was a substantial factor in the alleged adverse action.[1]

[1] The retaliatory conduct that Revell alleges is insufficient as a matter of law "to deter a person of ordinary firmness from exercising [her] First Amendment rights." *McKee,* 436 F.3d at 170 (internal quotation marks omitted). Courts have declined to find adverse action where the "alleged retaliatory acts were criticism, false accusations or verbal reprimands." *Brennan v. Norton,* 350 F.3d 399, 419 (3d Cir.2003). Revell's allegations, which were equivalent to a few criticisms, admonishments, or verbal reprimands, do not rise to the level of a campaign of retaliatory harassment.[2]

**\*907** [2] Significantly, Revell offers little proof that any of the conduct was done for the purpose of retaliating against her. For example, on December 9, 2004, Revell's brother Luke was threatened by two Jersey City Police Department plainclothes officers. Yet there is a lack of evidence that the attack on Luke was in retaliation for Revell's letter-writing. Revell also claims that the Department threatened to fire her brother Thomas. Again, the record discloses no evidence that the threat to Thomas was linked to any retaliatory animus; rather, the record reveals evidence that the Department had independent reasons for questioning Thomas' position. Nor is there evidence that Revell's random drug test constituted retaliatory conduct. Finally, Revell argues in support of her claim that appellee Troy in January 2005 told her to stop writing letters. Revell, however, was not transferred until 2006, over one year later. We cannot conclude that these acts satisfy the standard of "an unusually suggestive temporal proximity" which could prove causation.

**\*\*3** Revell has failed to carry her burden of showing that any particular named defendant engaged in sufficient adverse conduct with a retaliatory animus, or that the acts she alleges furnish the essential causation connection. In sum, there is insufficient evidence to find that appellant's letter-writing was a substantial factor in any negative or adverse conduct directed towards her.

## IV.

Having held that Revell has not satisfied her burdens of proving either adverse action or that her letter-writing caused the actions which she alleges were adverse, we need not address the appellees' claim of qualified immunity.[3]

## V.

[3] Revell has similarly failed to demonstrate the adverse action necessary to maintain a claim under CEPA. Under CEPA, " '[r]etaliatory action' means the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19–2(e). According to the New Jersey courts, CEPA requires "an employer's action to have either impacted on the employee's 'compensation or rank' or be 'virtually equivalent to discharge.' " *Klein v. Univ. of Med. and Dentistry of N.J.,* 377 N.J.Super. 28, 871 A.2d 681, 691 (N.J.Super.2005). "Moreover, retaliatory action does not encompass action taken to effectuate the discharge, suspension or demotion but rather speaks in terms of completed action." *Id.* (internal quotation marks omitted).

"The imposition of a minor sanction is insufficient to constitute a retaliatory action under the statute. Nor does the imposition of a condition on continued performance of duties in and of itself constitute an adverse employment action as a matter of law, absent evidence of adverse consequences flowing from that condition." *Id.* at 691–92 (internal citations omitted). No reasonable juror could find that

Revell has satisfied this standard. At most, she has shown that the actions complained about do not impact her compensation or rank, and were not virtually equivalent *908 to discharge. She thus fails to state a claim under the CEPA.

We will affirm the judgment of the District Court.

**All Citations**

394 Fed.Appx. 903, 2010 WL 3610162

## Footnotes

1. As noted, the District Court agreed that "some of Plaintiff's speech, limited to those letters sent to various public officials, is protected by the First Amendment." 2009 WL 3152110, at *4.

2. Judge Rendell disagrees with the conclusion that Revell failed to allege an "adverse action" for purposes of her First Amendment claim. Revell averred that as a result of her public disagreement with Defendants' conduct, she was transferred from the Property Room to a new assignment on patrol duty, where she lacked any meaningful responsibilities and was not actually given patrol work; rather, she was stationed in a hallway for several months without any tasks and was demeaned by her supervisor as "half a cop" in front of fellow police officers. This transfer is sufficiently adverse under relevant jurisprudence. *See, e.g., Rutan v. Republican Party,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (noting that even "an act of retaliation as trivial as failing to hold a birthday party for a public employee" is protected by the First Amendment if the conduct is "intended to punish her for exercising her free speech rights."); *McKee v. Hart,* 436 F.3d 165, 170 (3d Cir.2006) ("The effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable.") (internal quotations omitted). Under similar circumstances, the Court of Appeals for the First Circuit recently found a transfer that substantially altered an employee's duties and working environment, but maintained her same job title and salary, could lead a jury to conclude that the post-transfer working conditions were "unreasonably inferior" to the prior employment situation. *Rodriguez–Garcia v. Miranda–Marin,* 610 F.3d 756, 766 (1st Cir.2010) (noting that the transfer deprived plaintiff of her prior responsibilities, and she spent most of her time in a windowless storage area doing nothing post-transfer). Indeed, this Court previously held that "a cause of action is supplied by all but truly de minimis violations." *O'Connor v. City of Newark,* 440 F.3d 125 (3d Cir.2006) ("A First Amendment retaliation claim will lie for any individual act which meets this 'deterrence threshold,' and that threshold is very low.").

3. The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 815, 172 L.Ed.2d 565 (2009) (internal quotation marks omitted).

---

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.