**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TRISHA TSHUDY, | No. 4:22-CV-01431 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| PENNSYLVANIA STATE UNIVERSITY, | |
| Defendant. | |

**MEMORANDUM OPINION**

**NOVEMBER 18, 2022**

Plaintiff Trisha Tshudy is a law student with a documented disability, and her law school—Penn State Dickinson Law—accommodated her disability in a variety of ways. These accommodations included rescheduled and delayed examinations, virtual class attendance, extension of time during examinations, a private room for examinations, and more. During her 2L year, Penn State's Honor Committee found plagiarism in one of Tshudy's final papers. After an Honor Committee hearing confirmed that Tshudy had plagiarized, Tshudy was not expelled. Instead, she was reprimanded, instructed to attend counseling, and informed that her full-tuition scholarship would be revoked going forward.

Because Tshudy cannot re-enroll until her current tuition balance is paid, she now moves to enjoin Penn State from revoking her scholarship so she can go back to school for free, even after plagiarizing. But the standard for injunctive relief in

federal court is a very high one, and Tshudy's Motion does not satisfy that standard. Her Motion for a Preliminary Injunction is denied for the reasons set forth below.

## I.    BACKGROUND

Plaintiff Trisha Tshudy is a student at Dickinson Law School, an accredited law school of The Pennsylvania State University (known as "Penn State," and the Defendant in this case), where she received a full-tuition scholarship and was granted accommodations for a documented disability.[1] Those accommodations included, among other allowances, remote enrollment for classes during the Fall 2021 semester and the ability to take her course examinations with extra time in a private room.[2] Tshudy alleges that Penn State then discriminated against her when they refused to allow her to take her exams remotely.[3]

Taking the exams on campus, Tshudy alleges, caused her to become ill, which resulted in her submitting an "incomplete" final paper to Adjunct Professor James M. Gould for the course entitled "Biotech, Pharmaceuticals and the Law."[4] Penn State avers that the law school had made clear to Tshudy that, despite her allowance to attend classes remotely, she would be required to take her examinations in-person and on campus.[5] The law school also alleges that Tshudy did not ask for an extension of time to submit her final paper for Professor Gould's class or otherwise

---

[1]    Doc. 1 at ¶¶ 5, 8-9.
[2]    Doc. 28 at p. 2.
[3]    Doc. 1 at ¶ 10.
[4]    *Id*. at ¶¶ 11-13; *see* Doc. 28 at p. 7.
[5]    Doc. 28 at pp. 3-4.

communicate that she was having any trouble with the assignment or with meeting the deadline.[6]

When Professor Gould reviewed Tshudy's paper, he alerted Penn State academic administrators that he suspected Tshudy had committed plagiarism because her paper "exhibited a high degree of tracking with a Note published by Hannah-Alise Rogers[.]"[7] Penn State then used plagiarism comparison software to compare Tshudy's paper to the Rogers Note, which revealed that 29% of Tshudy's paper was indeed uncited content pulled directly from the Rogers Note.[8] The law school also performed a manual comparison of Tshudy's paper against the Rogers Note, and found that even more content in Tshudy's paper had been lifted from Rogers' work.[9]

When Tshudy enrolled at Penn State, she signed the Dickinson Law Honor Code, which defines "plagiarism" and sets forth the procedures for adjudicating alleged substantive violations of the Code (including allegations of plagiarism).[10] Because Penn State found that Tshudy may have plagiarized, Penn State initiated disciplinary proceedings against her.[11] Tshudy alleges that she was denied counsel

---

[6]   *Id*. at p. 5.
[7]   *Id*. at p. 7.
[8]   *Id*. at p. 7.
[9]   *Id*. at pp. 7-8.
[10]  *Id*. at p. 6.
[11]  *Id*. at p. 8.

during this proceeding and unable to "cross-examine" the software that had revealed her offense.[12]

The hearing took place on January 14, 2022; Tshudy attended and did not bring an attorney.[13] While Penn State argues that the Honor Code expressly allows for students to appear at hearings with legal representation, Tshudy alleges that she was "denied" counsel.[14] After the hearing, the Honor Code Committee found that Tshudy violated the Honor Code and imposed a number of sanctions on her, including a written reprimand to appear in her record and denial of credit for Professor Gould's course.[15] Despite this finding, Tshudy was not expelled from Penn State.[16] She remains to this day a matriculated student of the law school, but—due to her violation of the Honor Code—she is not considered to be in "good" academic standing.[17]

On February 16, 2022, Dean Danielle Conway of Dickinson Law sent Tshudy an e-mail informing Tshudy that her scholarship would be revoked because she was no longer in good academic standing.[18] Conway's e-mail stated that Tshudy's

---

[12]  Doc. 27 at p. 1.
[13]  *Id*. at p. 9.
[14]  *Id*.; Doc. 1 at ¶ 23.
[15]  Doc. 28 at p. 11. ("The Hearing Board also made the following factual findings: (a) Ms. Tshudy had drawn upon and sometimes copied verbatim the Note published by Rogers in 2014 when preparing her assignment for Professor Gould in violation of the court instructions and of the Honor Code; and (b) Ms. Tshudy was at least disingenuous, and, at worse dishonest in explaining the similarities between the Rogers Note and her own paper.")
[16]  *Id*.
[17]  *Id*. at p. 12.
[18]  *Id*.

scholarship would not be retroactively revoked for her first three semesters (*i.e.*, Fall 2020, Spring 2021, Fall 2021), but that it was revoked effective the Spring 2022 semester and would remain revoked for Tshudy's third year.[19] Accordingly, the e-mail advised Tshudy that she had a tuition balance of $26,688 and was free to contact the University's Financial Aid office should she wish to apply for loans or inquire about other available assistance to cover this balance.[20] Penn State maintains that "at the time her scholarship was revoked, Tshudy had sufficient time to apply for and receive financial aid to allow for any loans to satisfy her outstanding balance . . . and cover the cost of her remaining semesters at Dickinson[.]"[21]

The parties disagree about what happened next. Tshudy alleges that she reached out to the Financial Aid office many times and was ignored, whereupon she reached out to the Penn State Bursar's Office instead.[22] Tshudy argues that the Bursar's Office told her that Penn State had not followed proper procedures in revoking her scholarship, and that it could not be revoked.[23] At that point, Tshudy alleges, Conway instructed Tshudy not to speak to anyone about the information she received from the Bursar's Office.[24] Penn State agrees that Tshudy did contact various administrative offices, including the Bursar's Office, but asserts that she did

---

[19] *Id.*
[20] *Id.*
[21] *Id.* at p. 13.
[22] Doc. 1 at ¶ 16.
[23] *Id.*
[24] *Id.* at ¶ 17.

not do so to discuss loans or financial aid to cover her tuition balance; instead, Penn State asserts, Tshudy asked the Bursar's Office to reinstate her scholarship, which she claimed had been removed due to an "administrative error."[25]

According to Penn State, there had been no such error, and Tshudy had been advised of the reasons why her scholarship had been revoked.[26] Conway's e-mail to Tshudy, then, did not forbid her from speaking to financial administrators, but rather only instructed her to "refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of [Tshudy's] scholarship."[27] Neither party alleges that Tshudy has attempted to take out loans and/or secure alternative financing, or that she has been unable to do so. Penn State avers that she remains a matriculated student and is free to resume her studies upon payment of her tuition balance.[28]

Tshudy filed suit against Penn State on August 21, 2022, and moved for a preliminary injunction on September 14, 2022.[29] Her Motion seeks to enjoin Penn State from "taking any action barring [Tshudy] from completing her third year as a law student at Dickinson Law School . . . or revoking her scholarship."[30] That Motion is has been fully briefed and is ripe for disposition.[31]

---

[25]   Doc. 28 at p. 13.
[26]   *Id*.
[27]   *Id*.
[28]   *Id*. at p. 1.
[29]   Doc. 26.
[30]   *Id*.
[31]   Docs. 26, 27, 28.

## II.    LAW

The United States Court of Appeals for the Third Circuit has established that preliminary injunctive relief is an "extraordinary remedy" that "should be granted only in limited circumstances."[32] In determining whether to grant a request for a preliminary injunction, courts consider four factors: (1) "whether the movant has shown a reasonable probability of success on the merits"; (2) "whether the movant will be irreparably injured by the denial of relief"; (3) "whether granting preliminary relief will result in even greater harm to the nonmoving party"; and (4) "whether granting the preliminary relief will be in the public interest."[33] Factors three and four, however, are only considered if the "movant meet[s] the threshold for the first two most critical factors: [she] must demonstrate that [she] can win on the merits (which requires a showing significantly better than negligible)" and that "[she] is more likely than not to suffer irreparable harm in the absence of preliminary relief."[34]

## III.    ANALYSIS

### A.    Likelihood of Success on the Merits

Tshudy argues that she will likely succeed on the merits because "there is no dispute that the University required her to take a final examination in person[,] which

---

[32] *Kos. Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citations omitted) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)); *see Philadelphia Vietnam Veterans Mem'l Soc'y v. Philadelphia*, No. 21-1125, 2022 U.S. App. LEXIS 7629, at *5-6 (3d Cir. Mar. 23, 2022).

[33] *Crissman v. Dover Down Ent. Inc.*, 239 F.3d 357, 364 (3d Cir. 2001).

[34] *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (internal citations omitted).

was in violation of the right to reasonable accommodation."[35] Penn State, on the other hand, argues that Tshudy cannot demonstrate likelihood of success on the merits for any of her three asserted claims. The Court agrees with Penn State.

### i.     Tshudy's Due Process Claim

Tshudy alleges that her due process rights were violated when she was not given counsel at the Honor Committee hearing or allowed to "cross-examine" the non-sentient computer software used by Penn State to uncover her plagiarism, or her other accusers.[36] Tshudy also alleges that her due process rights were violated because it was unlawful for Penn State to use the software they chose to use without Tshudy's consent,[37] but those allegations do not make sense within the scope of due process analysis and this Court declines to analyze them.

Penn State argues that Tshudy's due process allegations will fail because Tshudy was given the opportunity to be heard in a meaningful manner by an impartial decision-maker at the hearing—indeed, she testified, examined witnesses, and made closing remarks.[38] Additionally, Penn State argues that it did not "deny"

---

[35]   Doc. 27 at p. 3. But is this the gravamen of her claims, that she was forced to take examinations in person? Or is it that she was denied due process during the Honor Committee hearing? Or that she was instructed not to deceive staff in the University's administrative offices? It is not this Court's job to opine between the lines of this non-linear narrative. Success "on the merits" certainly means more than whether a plaintiff can demonstrate that one fact in an alleged chain of events is true.

[36]   Doc. 1 at ¶¶ 31-32.

[37]   *E.g.*, *Id.* at ¶¶ 33-34 ("Ms. Tshudy's paper was illegally submitted to Turnitin by defendant, since her permission was a *sine non qua* for the use of Turnitin" and "The Turnitin End-Use License Agreement requires that Tshudy would have had to agree to what defendant did surreptitiously and without her consent.")

[38]   Doc. 28 at p. 20.

Tshudy counsel, as the Honor Code provides that the accused student "has the right, at their own expense, to secure legal representation for any stage of the Honor proceeding."[39] Regarding Tshudy's arguments about her inability to "cross-examine" the plagiarism-checking software Penn State used, Penn State argues that it was under no obligation to conduct the hearing subject to the Federal Rules of Evidence, and that the use of the software and presentation of its findings did not violate Tshudy's due process rights.[40] The Court agrees with Penn State.

Due process is a "flexible concept and the process due in any situation is to be determined by weighing: (1) the private interests at stake; (2) the governmental interests at stake; and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards."[41] Although "the Due Process Clause protects students during disciplinary hearings at public institutions," "[t]here is not a specific format that these proceedings have to follow, so long as the university provides sufficient protections to comply with due process."[42]

Procedural due process "requires that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the

---

[39] *Id.*

[40] *Id.*

[41] *Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989) (quoting *Mathews v. Eldridge*, 424 U.S. 319 (1976)).

[42] *Van Le v. Univ. of Med. & Dentistry*, 379 Fed. Appx. 171, 174 (citing *Sill v. Pennsylvania State University*, 462 F.2d 463, 469 (3d Cir. 1972)).

case," and the type of notice and hearing "depends on the context."[43] In the academic context, "more informal forms of notice and hearings suffice."[44] If a university dismisses a student for academic reasons, "it need only provide an informal give-and-take between the student and the administrative body responsible for the dismissal."[45]

In the context of due process rights for students within state universities, the Third Circuit has stated: "[C]ourts are generally ill-equipped to review subjective academic appraisals of educational institutions, and [the Supreme Court] admonished courts to permit university faculties a wide range of discretion in making judgments as to the academic performance of students."[46] Further, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" by "an impartial decisionmaker"—those decisionmakers are "presumed to be impartial, and only evidence of 'actual bias or a likelihood of bias' can support a due process claim."[47] And that alleged prejudice "must be based on more than mere speculation and tenuous inferences."[48]

---

[43] *Keles v. Bender*, No. 21-1497, 2022 U.S. App. LEXIS 7373, at *8 (3d Cir. March 18, 2022) (internal citations omitted).

[44] *Id*.

[45] *Id*.

[46] *Hankins v. Temple University*, 829 F.2d 437, 444 (3d Cir. 1987) (citing *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 432 U.S. 78, 98 (1978) and *Regents of the Univ. of Mich. V. Ewing*, 474 U.S. 214 (1985)).

[47] *Park v. Temple Univ*, 757 F. App'x 102, 106 (3d Cir. 2018) (citing *Sill*, 462 F.2d at 469.

[48] *Osei v. Temple Univ.*, No. 10-2042, 2011 U.S. Dist. LEXIS 113431, at *11 (E.D. Pa. Sept. 30, 2011), *aff'd* 518 F.App'x 86 (3d Cir. 2013).

Here, Tshudy's due process claim is unlikely to succeed on the merits, and the reason for this is quite simple. Tshudy has not been dismissed from Dickinson Law; she is still a non-matriculated student who is free to enroll in classes once she pays the remainder of her tuition balance. Yes, her scholarship was revoked, but it was only revoked after the Honor Committee held a hearing where Tshudy gave remarks, questioned witnesses, and meaningfully participated for the hours-long proceeding. Under these facts, Tshudy was given the opportunity to be heard in a serious manner (in a formal hearing) by an impartial decisionmaker (the Honor Committee).

Most fatal to Tshudy's due process claim, however, is that fact that it is brought in the context of an academic disciplinary hearing at a state university—and there is no law establishing that the rights Tshudy alleges to have been violated exist. First, Tshudy's allegations imply that she had a right to university-provided counsel. But no such right exists for accused students in this context.[49]  Tshudy similarly alleges that Penn State violated her right to Procedural Due Process when it failed to provide her with "expert advice" on how to "cross-examine" the Turnitin software program.[50]  Again, due process affords accused state university students of no such right. While Tshudy chose not to have an attorney present for the hearing, Penn State did not "bar" her from retaining counsel. Most importantly, though, Penn State is

---

[49]  *See Hewlette-Bullard v. Pocono Mountain School District*, 522 F. Supp. 3d 78, 100 (M.D. Pa. 2021) (holding that while a school district must provide effective notice and an informal hearing, "[t]o satisfy due process, the district is not required to provide the student an opportunity to secure counsel, cross-examine witnesses, or call his own witnesses").

[50]  Doc. 1 at ¶ 31.

correct in its assertion that academic institutions are under no obligation to provide counsel to accused students in the context of state university disciplinary proceedings.[51]

Finally, Tshudy's allegations do not overcome the presumption of impartiality to which this Court is bound to hold Penn State, nor do they allege actual bias. Conversely, Penn State's arguments lead this Court to believe that Penn State could likely establish that the university had robust procedures in place to ensure impartiality (*e.g.*, Penn State had a detailed and thorough Honor Code in place, which Tshudy and all students were required to read and affirm[52]), and that the Committee was not biased against Tshudy on account of her disability—indeed, neither party asserts that the Honor Committee demonstrated bias against her on account of her disability. For these reasons, this Court finds that Tshudy's due process claim is unlikely to survive on the merits.

### ii.       Tshudy's Discrimination (ADA) Claim

Tshudy alleges that Penn State discriminated against her under the Americans with Disabilities Act ("ADA") by forcing her to take her Fall 2021 examinations on campus to the detriment of her health.[53] She also alleges that Penn State violated her right to certain accommodations, to which she alleges Penn State had agreed and

---

[51]   *Hewlette-Bullard*, 522 F. Supp. 3d at 100.
[52]   Doc. 28 at pp. 6-7.
[53]   Doc. 1 at ¶ 41.

upon which she detrimentally relied.[54] It follows, then, that those accommodations would have been a stark exception to Penn State's policy requiring students to take examinations on campus (a policy Penn State alleges to exist).[55]

As this Court has stated, plaintiffs who allege violations under the ADA "may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodation."[56] Penn State alleges that "it is unclear from [Tshudy's] Complaint and Amended Motion for Injunction what theory of liability Ms. Tshudy is asserting under the ADA,"[57] and this Court agrees—though because the Complaint's language arguably resembles that required for a "failure to accommodate" claim, I will proceed assuming that Tshudy intended to being such a claim. To be clear, Tshudy has not alleged facts or legal arguments suggesting she is seeking relief under disparate treatment or disparate impact causes of action.

A "failure to accommodate" claim under the ADA requires a plaintiff to show the following: "(1) that [she] is a disabled person within meaning of the ADA; (2) [she] is otherwise qualified to perform essential functions of the job, with or without reasonable accommodations by employer [or in this case, university]; and (3) [she] has suffered otherwise adverse employment [or in this case, education] as a result of

---

[54] Doc. 10 at p. 6.
[55] Doc. 28 at pp. 3-4.
[56] *Frazier v. Pa. State Univ.*, No. 4:21-cv-00350, 2022 U.S. Dist. LEXIS 89811, at *14 (M.D. Pa. May 18, 2022) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002)).
[57] Doc. 28 at p. 21.

discrimination."[58] In assessing a failure to accommodate claim, courts consider the following: (1) whether the requested accommodation is reasonable; (2) whether it is necessary; and (3) whether it would fundamentally alter the nature of the program.[59]

Tshudy alleges that she received accommodations from Penn State to take her examinations online, and Penn State refutes this claim, stating that Tshudy never requested to take her examinations online and instead cooperated with Penn State's known policy requiring students to take their examinations on campus.[60] Penn State alleges a long history of accommodating Tshudy's disability in a variety of ways, including a 100% extension of time to take examinations, an allowance to take examinations in a private room with close proximity to a restroom, an allowance to take breaks as needed during examinations, accommodation for Tshudy's service animal during the course of the examinations, and an allowance to have food, beverages, and medications available and accessible to Tshudy during the course of the examinations.[61] Penn State even e-mailed Tshudy photographs of the examination room and a description of the exit path from the testing room to the restrooms.[62]

---

[58] *Strausser v. Gertrude Hawk Chocolates, Inc.*, No. 3:15-cv-2458, 2018 U.S. Dist. LEXIS 48794, at *5 (M.D. Pa. Mar. 26, 2018).

[59] *See Berardelli v. Allied Services Institute of Rehabilitation Medicine*, 900 F.3d 104, 123 (3d Cir. 2018).

[60] Doc. 28 at p. 22.

[61] *Id*. at pp. 3-4.

[62] *Id*. at p. 5.

Tshudy's ADA claim is unlikely to succeed on the merits because she likely cannot establish that she explicitly requested, and Penn State granted, an accommodation specifically allowing her to take her examinations remotely. Tshudy alleges that Penn State had granted her an accommodation for "remote enrollment," but she does not specify how and whether that accommodation applied to examinations—and her back-and-forth with Penn State administrators to make sure that the testing environment would accommodate her disability indicate the opposite of what Tshudy alleges, *i.e.*, that she was aware of, and cooperative with, the on-campus testing requirement.[63]

In failing to demonstrate the existence of a remote test-taking accommodation, Tshudy therefore likely cannot "describe what reasonable accommodations she required or requested, nor [can] she describe what reasonable accommodations [Penn State] denied."[64] And where a plaintiff "does not provide the Court with any indication of what occurred to support her disability allegations, the Court cannot engage in the necessary individualized assessment to determine whether she can state a claim under the ADA."[65] Therefore, Tshudy's ADA claim is unlikely to succeed on the merits because she cannot satisfy the elements for a failure to accommodate cause of action.

---

[63] Doc. 1 at ¶ 9.

[64] *Geronimo v. Ford*, No. 3:20-CV-02145, 2021 U.S. Dist. LEXIS 173870, at *16 (M.D. Pa. Sept. 14, 2021).

[65] *Id*. at *17.

### iii.     Tshudy's First Amendment Claim

Tshudy alleges that her "First Amendment rights were violated when she was instructed by Dean Conway not to discuss with any employees the Bursar's statement that her scholarship was illegally revoked."[66] To support this claim, Tshudy attached to her Complaint and Motion the allegedly offending e-mail from Conway to Tshudy, which this Court will quote in full below:

> I have received the notes from the University Bursar about your calls to this office. I confirmed that you contacted Penn State University Bursar and Student Financial Services on April 6, 2022. The Bursar's Office confirmed that you communicated to them that your scholarship was 'removed in error.' I also confirmed that on April 27, 2022 the Bursar's Office instructed you to contact the Dickinson Law Financial Aid Office . . . Again, I direct you to await the decision of the Affirmative Action Office. Until then, please refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of your scholarship.[67]

Tshudy's alleged theory of liability here is unclear, so this Court will proceed by assuming that Tshudy is bringing a claim of retaliation under the First Amendment, applied to state actors via Section 1983. Such a claim has three elements: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action.[68]

---

[66]   Doc. 10 at ¶ 16(e); *see* Doc. 28 at p. 23.
[67]   Doc. 1, Ex. B.
[68]   *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).

As this Court has stated, "*de minimus* responses to protected speech such as criticism, false accusations, or verbal reprimands do not rise to the level of actionable retaliation."[69]  The facts pled, and indeed, Conway's e-mail itself (which forms the basis of Tshudy's claim) can, at most, be plausibly understood to be no more than criticism, false accusation, or reprimand. This Court finds Penn State's citation to the Third Cicruit's decision in *Revell v. City of New Jersey* appropriate and instructive here.[70] In that case, the plaintiff alleged that defendants had violated her First Amendment rights by instructing her to stop a letter-writing campaign that was critical of the City of Jersey City and its employees.[71]  The Third Circuit affirmed this decision, holding that the instruction the plaintiff/appellant received was "the equivalent to a few criticisms, admonishments, or verbal reprimands" not giving rise to a First Amendment violation.[72]

This Court explored this standard in *Herman v. Hosterman*, where a plaintiff police officer brought a Section 1983 First Amendment Claim against a municipality and police chief, alleging that defendants retaliated against him and violated his First Amendment rights by conducting an investigation of plaintiff that was based on allegedly warrantless allegations of harassment.[73]  Plaintiff alleged that the stress of

---

[69]  *Herman v. Hostram*, No. 1:11-cv-989, 2011 U.S. Dist. LEXIS 120750 (M.D. Pa. Oct. 19, 2011) (internal citations and quotations omitted).
[70]  Doc. 28 at pp. 25-26; 394 Fed. Appx. 903 (3d Cir. 2010).
[71]  *Revell*, 394 Fed. Appx. At 905.
[72]  *Id*. at 907; *see Herman*, 2011 U.S. Dist. LEXIS at *9-10.
[73]  *Herman*, 2011 U.S. Dist. LEXIS at *4.

this incident gave him hypertension, which caused him to suffer various harms and prevented him from being able to continue working for a period of time.[74]   The plaintiff did not allege that he was ever disciplined as a result of the investigation or that any adverse action had been taken against him as the result of the investigation.[75]

In analyzing these allegations, this Court found that the alleged conduct of the defendants did not satisfy the "person of reasonable firmness" standard, specifically holding that "[p]laintiff has done nothing more than make a conclusory statement regarding [the defendant's] 'deep antagonism' without any supporting factual allegations raising the allegation beyond the speculative level. . . [t]hese allegations are precisely the type of *de minimus* allegations that the Third Circuit has found are insufficient to support a claim for First Amendment retaliation [under *Revell*]."[76]

Dean Conway's e-mail to Tshudy is akin to the instruction the plaintiff/appellant received in *Revell*. There, the plaintiff was explicitly told to stop an entire letter-writing campaign, and the Third Circuit affirmed the District Court's finding that no First Amendment violation had taken place. Here, Tshudy was instructed to "please refrain" from making certain statements to Penn State employees in certain offices. Guided by this Court's analysis in *Herman*, a person of ordinary firmness would not interpret Dean Conway's e-mail as a deterrent to First Amendment expression. As in *Herman*, Tshudy's allegations are speculative—

---

[74] *Id*.
[75] *Id*.
[76] *Id*. at *10.

the Complaint implies that Conway's e-mail was motivated by a desire to keep Tshudy from revealing to the Bursar's Office that the law school had revoked her scholarship in error, but aside from this conclusion, it pleads no additional facts that can shift this claim from speculative territory into fertile ground.

This Court agrees with Penn State that Dean Conway's e-mail "merely requested that Tshudy stop misrepresenting to Penn State and/or Dickinson Law employees that her scholarship was revoked in error when it was not."[77] Dean Conway's e-mail does not constitute actionable retaliation and Tshudy's First Amendment claim is unlikely to succeed on the merits.

### B.     Irreparable Harm

Tshudy argues that denial of injunctive relief will result in her suffering irreparable harm "since [she] will not be able to complete her third year of law school unless she is immediately allowed to resume classes."[78] Penn State argues that the university is not barring Tshudy from completing her third year of law school, and that she is free to re-enroll as soon as she pays her tuition balance.[79] In making this argument, Penn State cites to a number of cases from this Court and from within this judicial Circuit, all of which support a finding that loss of a scholarship, and delayed academic pursuits, do not constitute irreparable harm under the injunctive relief

---

[77] Doc. 28 at p. 24.
[78] Doc. 26.
[79] Doc. 28 at pp, 26-27.

standard. In keeping with that line of precedent and applicable cases, this Court agrees with Penn State.

In demonstrating irreparable harm under the injunctive relief standard, "[e]stablishing a risk of irreparable harm is not enough. A plaintiff has the burden of proving a clear showing of immediate irreparable injury."[80] Additionally, "[t]he requisite feared injury or harm must be irreparable—not merely serious or substantial," and "it must be of a peculiar nature, so that compensation in money cannot atone for it."[81] The question then for this Court is whether Tshudy is being irreparably harmed by the revocation of her scholarship and resulting delay in her studies until she can pay the tuition balance.

In *Howe v. Pa. State Univ. – Harrisburg*, this Court answered this question in the negative.[82] There, the plaintiff (a student at Penn State's Harrisburg campus) also had his scholarship revoked after being disciplined by the university.[83] He argued that the suspension of his studies would force him to "take an entire year off of his education," which would prevent him from completing his education "in a timely and ordinary manner."[84] This Court found that the plaintiff had not suffered irreparable harm, because the loss of scholarships can be compensated for with

---

[80]   *Ecri v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987); *see Adams v. Freedom Forge Corp.*, 204 F.3d 475, 487 (3d Cir. 2000); *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992).
[81]   *Ecri*, 809 F.2d at 226.
[82]   No. 1:16-0102, 2016 U.S. Dist. LEXIS 11981, at *19-20 (M.D. Pa. Feb. 2, 2016).
[83]   *Id.*
[84]   *Id.*

monetary damages.[85] As for the delay in education, this Court also found that such a delay "does not constitute irreparable harm which would not be compensated with monetary damages in the future, if warranted."[86] Penn State also cited *Doe v. University Sciences*, where the District Court held  that any "loss of scholarship money can undeniably be compensated by monetary damages."[87]

Because Tshudy is alleging that her irreparable harm is the loss of her scholarship and the delay of her law school career, and because this Court has held that loss of scholarship money and a delay in educational pursuits are compensable with monetary damages and therefore do not constitute irreparable harm, Tshudy has failed to demonstrate that she will suffer irreparable harm if this Court does not grant a preliminary injunction.

## IV.   CONCLUSION

To obtain injunctive relief, Tshudy must demonstrate both a reasonable probability that her claims will succeed on the merits, and that she will more than likely suffer irreparable harm absent court intervention. She has shown neither.[88] Accordingly, her Motion for a Preliminary Injunction is denied.

---

[85]   *Id.*

[86]   *Id.* (citing, *e.g.*, *Schulman v. Franklin & Marshall Coll.*, 371 Pa. Super. 345, 538 A.2d 49, 52 (Pa. Super. 1988) (student failed to establish that he would be irreparably harmed absent an injunction, as he could be compensated by money damages for time lost from the classroom)).

[87]   No. 19-358, 2020 U.S. Dist. LEXIS 158684, at *10 (E.D. Pa. Sept. 1, 2020).

[88]   Because this Court has found that Tshudy fails to satisfy the first two factors required for a preliminary injunction, I need not analyze factors three and four. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
Chief United States District Judge