## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TRISHA TSHUDY,

   Plaintiff,

  v.

PENNSYLVANIA STATE
UNIVERSITY,

   Defendant.

No. 4:22-CV-01431

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 18, 2022

Trisha Tshudy is a student at Penn State Dickinson Law; the law school's Honor Committee found that she plagiarized in a final paper. As a result, Penn State revoked Tshudy's full-tuition scholarship. Tshudy, who has a documented disability, filed suit against Penn State under three causes of action. Taken as true and reviewed in the light most favorable to Tshudy, her allegations fail for a number of reasons. First, Tshudy alleges that Penn State violated due process rights that do not exist within the academic disciplinary hearing context. Second, Tshudy purports to bring a claim under the Americans with Disabilities Act, but her Complaint fails to include a statement setting forth the theory of ADA liability under which she is proceeding—leaving Penn State and this Court to guess. Third, and finally, Tshudy alleges that Penn State violated her First Amendment right to free speech when the Dickinson Law Dean e-mailed her and instructed Tshudy to refrain from making certain

statements to certain Penn State employees. For the reasons stated below, none of these claims survive Penn State's Motion to Dismiss.

## I.   BACKGROUND

Plaintiff Trisha Tshudy is a student at Penn State Dickinson Law ("Dickinson Law") (an accredited law school of The Pennsylvania State University or "Penn State," the Defendant in this case), where she received a full tuition scholarship and was granted accommodations for a documented disability.[1] Tshudy alleges that Penn State then discriminated against her when they refused to allow her to take her law school examinations remotely and required her to come to campus.[2] Taking the exams on campus, Tshudy alleges, caused her to become ill, which resulted in her submitting an incomplete final paper to Adjunct Professor James M. Gould.[3]

Upon reviewing that paper, Penn State accused Tshudy of plagiarism and of violating the law school's Honor Code—this determination was allegedly made with the assistance of plagiarism-checking software called "Turnitin."[4] Tshudy alleges that Penn State originally used a different kind of software and used Turnitin only after the first software used did not give the law school the result it wanted, *i.e.*, it did not reveal that Tshudy plagiarized.[5] Tshudy received an "F" grade for Gould's course and subsequently attended a hearing to determine if she had violated the

---

[1]   Doc. 1 at ¶¶ 5, 8-9.
[2]   *Id*. at ¶ 10.
[3]   *Id*. at ¶¶ 11-13.
[4]   *Id*. at ¶¶ 13, 18.
[5]   *Id*. at ¶ 21.

Honor Code.[6] At the hearing, Penn State found against Tshudy and, a month later, her scholarship was revoked because of this finding.[7] Tshudy alleges that she did not have the opportunity to be represented by counsel at the hearing, and that she was denied access to "expert advice" regarding the plagiarism software the law school used to support their accusations.[8]

On February 16, 2022, Dean Danielle Conway of Dickinson Law sent Tshudy an e-mail informing Tshudy that her scholarship would be revoked because she was no longer in good academic standing (presumably due to the Honor Committee's finding).[9] Conway's e-mail stated that Tshudy's scholarship would not be retroactively revoked for her first three semesters (*i.e.*, Fall 2020, Spring 2021, Fall 2021), but that it was revoked effective the Spring 2022 semester and would remain revoked for Tshudy's third year.[10] Accordingly, the e-mail advised Tshudy that she now had a tuition balance of $26,688 and was free to contact the University's Financial Aid office should she wish to apply for loans or inquire about other available assistance.[11]

Tshudy alleges that she reached out to the Dickinson Law Financial Aid office many times and was ignored, whereupon she contacted the Penn State Bursar's

---

[6]   *Id*. at ¶¶ 13-14.
[7]   *Id*. at ¶ 15.
[8]   *Id*. at ¶ 18.
[9]   *Id*. at ¶ 48; Ex. A.
[10]   *Id*.
[11]   *Id*.

Office instead.[12] The Bursar's Office told her that Dickinson Law had not followed proper procedures in revoking her scholarship, and that it could not be revoked.[13] At that point, Tshudy alleges, Dean Conway instructed Tshudy not to speak to anyone about the information she received from the Bursar's Office.[14] Tshudy does not allege that she has attempted to take out loans and/or secure alternative financing, or that she has been unable to do so.

Tshudy filed suit against Penn State on August 21, 2022, and Penn State filed a Motion to Dismiss on September 14, 2022.[15] That Motion has been fully briefed and is now ripe for disposition.[16]

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following *Bell Atlantic Corp. v. Twombly*[17] and *Ashcroft v. Iqbal*,[18] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[19] In deciding a motion to dismiss, courts within the United States Court of Appeals for the Third

---

[12]   *Id*. at ¶ 16.
[13]   *Id*.
[14]   *Id*. at ¶ 17.
[15]   Doc. 26.
[16]   Docs. 1, 29, 30, 34, 37.
[17]   550 U.S. 544 (2007).
[18]   556 U.S. 662 (2009).
[19]   *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

Circuit must follow three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) assume the veracity of all well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief.[20]

## III.   ANALYSIS

Tshudy's Complaint brings three causes of action against Penn State. The first cause of action alleges that Penn State's conduct during the Honor Committee Hearing violated Tshudy's right to Procedural Due Process under the United States Constitution.[21] The second cause of action alleges that Penn State violated the Americans with Disabilities Act ("ADA") in failing to accommodate Tshudy's disability by requiring her to take her examinations on campus.[22] And the third cause of action alleges that Penn State retaliated against Tshudy and violated her First Amendment rights under the United States Constitution by forbidding her to discuss her situation with Penn State financial aid staff.[23]

### A.   Due Process Claim

Tshudy alleges that her right to procedural due process was violated at the Honor Code Hearing because she was not given counsel at the hearing, she was not

---

[20]   *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

[21]   Doc. 1 at ¶¶ 26-36.

[22]   *Id*. at ¶¶ 37-43.

[23]   *Id*. at ¶¶ 44-51.

given the opportunity to cross-examine her accusers, and the evidence from the Turnitin plagiarism checker was "illegally accepted" and she was therefore "forced to confront" computer software.[24] Penn State argues that the law school was under no obligation to affirmatively provide an attorney to Tshudy, and that the hearing did not violate Tshudy's right to process on the grounds that the hearing was not conducted subject to the same rules governing formal judicial proceedings.[25] Ultimately, Penn State argues that "the alleged rights [Tshudy] claims were violated at the Honor Code Hearing simply do not exist or apply in the student disciplinary context."[26] The Court agrees with Penn State.

Due process is a "flexible concept and the process due in any situation is to be determined by weighing: (1) the private interests at stake; (2) the governmental interests at stake; and (3) the fairness and reliability of the existing procedures and the probable value, if any, of additional procedural safeguards."[27] "The Due Process Clause protects students during disciplinary hearings at public institutions," but with that said, "[t]here is not a specific format that these proceedings have to follow, so long as the university provides sufficient protections to comply with due process."[28]

Procedural due process "requires that a deprivation of life, liberty, or property

---

[24] *Id*. at ¶¶ 37-35.

[25] Doc. 30 at p. 5.

[26] *Id*. at p. 6.

[27] *Palmer v. Merluzzi*, 868 F.2d 90, 95 (3d Cir. 1989) (quoting *Mathews v. Eldridge*, 424 U.S. 319, (1976)).

[28] *Van Le v. Univ. of Med. & Dentistry*, 379 Fed. Appx. 171, 174 (citing *Sill v. Pennsylvania State University*, 462 F.2d 463, 469 (3d Cir. 1972)).

be preceded by notice and opportunity for hearing appropriate to the nature of the case," and the type of notice and hearing "depends on the context."[29] In the academic context, "more informal forms of notice and hearings suffice."[30] If a university dismisses a student for academic reasons, "it need only provide an informal give-and-take between the student and the administrative body responsible for the dismissal."[31]

In the context of due process rights for students within state universities, the Third Circuit has stated: "[C]ourts are generally ill-equipped to review subjective academic appraisals of educational institutions, and [the Supreme Court] admonished courts to permit university faculties a wide range of discretion in making judgments as to the academic performance of students."[32] Further, "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner" by "an impartial decisionmaker"— those decisionmakers are "presumed to be impartial, and only evidence of 'actual bias or a likelihood of bias' can support a due process claim."[33] And that alleged prejudice "must be based on more than mere speculation and tenuous inferences."[34]

---

[29]   *Keles v. Bender*, No. 21-1497, 2022 U.S. App. LEXIS 7373, at *8 (3d Cir. March 18, 2022) (internal citations omitted).

[30]   *Id*.

[31]   *Id*.

[32]   *Hankins v. Temple University*, 829 F.2d 437, 444 (3d Cir. 1987) (citing *Bd. of Curators of the Univ. of Mo. v. Horowitz*, 432 U.S. 78, 98 (1978); *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214 (1985)).

[33]   *Park v. Temple Univ*, 757 F. App'x 102, 106 (3d Cir. 2018) (citing *Sill*, 462 F.2d at 469).

[34]   *Osei v. Temple Univ.*, No. 10-2042, 2011 U.S. Dist. LEXIS 113431, at *11 (E.D. Pa. Sept. 30, 2011), *aff'd* 518 F.App'x 86 (3d Cir. 2013).

Here, Tshudy's due process allegations fail for a number of reasons. First, they are conclusory and/or inconsistent. By way of example: (1) "she did not have the opportunity to have counsel;" versus "[she] was not given counsel;" (2) "Plaintiff was denied due process at the honor code hearing;" (3) "Plaintiff was not allowed to appropriately cross-examine her accusers."[35] These bare allegations do not overcome the presumption that Penn State was impartial during the Honor Committee hearing, nor do they allege actual bias. It would certainly be appropriate for the Court to dismiss this claim on the basis of these conclusory allegations alone, but it is worth noting that context matters here.

This claim arises from an academic disciplinary hearing at a state university, and there is no law establishing that the rights Tshudy alleges were violated exist. First, Tshudy's allegations imply that she had a right to university-provided counsel. But no such right exists for accused students in this context.[36] Tshudy similarly alleges that Penn State violated her right to Procedural Due Process when it failed to provide her with "expert advice" on how to "cross-examine" the Turnitin software program.[37] Again, due process affords no such right to accused state university students. In keeping with instructive case law in this judicial Circuit, the Court finds

---

[35] Doc. 1 at ¶¶ 26-36.

[36] *See Hewlette-Bullard v. Pocono Mountain School District*, 522 F. Supp. 3d 78, 100 (M.D. Pa. 2021) (holding that while a school district must provide effective notice and an informal hearing, "[t]o satisfy due process, the district is not required to provide the student an opportunity to secure counsel, cross-examine witnesses, or call his own witnesses").

[37] Doc. 1 at ¶ 31.

that the right to directly cross-examine witnesses is not a necessary part of due process in the student disciplinary context.[38] Further, Tshudy's allegations do not overcome the presumption that Penn State operated impartially, nor do they allege actual bias. For example, she does not plead that those overseeing the Honor Code Committee were self-interested, or that they were biased against her on account of her disability. These pleading requirements set a high standard, and Tshudy's allegations do not satisfy that standard.

Because Tshudy's allegations do not sufficiently plead that Penn State violated her right to procedural due process, Penn State's Motion to Dismiss as to this clam is granted. This claim is dismissed with prejudice because the Court believes that further amendment would be futile; there are no facts that Tshudy can plead that will create rights that do not exist under the law.[39]

## B.   ADA Claim

This Court has held that plaintiffs who allege violations under the ADA "may proceed under any or all of three theories: disparate treatment, disparate impact, and failure to make reasonable accommodation."[40] The theory of liability upon which Tshudy is basing her claim is not clear. But the Complaint's language arguably

---

[38]   *See Johnson v. Temple University*, No. 12-515, 2013 LEXIS 134640, at *29 (E.D. Pa. Sept. 19, 2013); *see also Hewlette-Bullard*, 522 F. Supp. At 100.

[39]   *See Phillips v. Cnty. Of Allegany*, 515 F.3d 224, 237 (3d Cir. 2008); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

[40]   *Frazier v. Pa. State Univ.*, No. 4:21-CV-00350, 2022 U.S. Dist. LEXIS 89811, at *14 (M.D. Pa. May 18, 2022) (quoting *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 48 (2d Cir. 2002)).

resembles that required for a "failure to accommodate" claim, so this Court will proceed assuming that Tshudy is bringing such a claim. To be clear, Tshudy has not alleged facts or legal arguments suggesting she is seeking relief under disparate treatment or disparate impact causes of action.

Tshudy's claim under the ADA states that Penn State "discriminated against [her] [by] forcing her to take her Fall 2021 examinations on campus to the detriment of her health."[41] Penn State argues that, at the outset, Tshudy's ADA claim should be dismissed under Federal Rule of Civil Procedure 8 as it fails to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."[42] And if not dismissed for that reason, Penn State argues, the claim should be dismissed because Tshudy fails to allege that Penn State promised to give her a remote-exam accommodation—and the law school "cannot be held liable for failing to reasonably provide an accommodation when the accommodation was never requested."[43] Penn State is correct on both fronts.

First, dismissal under Federal Rule of Civil Procedure 8 is proper when a complaint leaves "the defendants having to guess what of the many things discusses constituted [a cause of action]".[44] Here, both Penn State and this Court have had to speculate and guess as to which cause of action Tshudy is alleging under the ADA.

---

[41] Doc. 1 at ¶ 41.
[42] Doc. 30 at pp. 6-7.
[43] *See id*. at pp. 7-8 (citing *LaGatta v. Pa. Cyber Charter Sch*., 726 F. Supp. 2d 578, 588-89 (W.D. Pa. 2010)).
[44] *Binsack v. Lackawanna County Prison*, 438 F.App'x 158, 160 (3d Cir. 2011).

That is not Penn State's responsibility, and it certainly is not this Court's. Forcing the Court to conduct this guessing exercise is grounds for dismissal under Rule 8.[45]

Second, a failure to accommodate claim under the ADA requires a plaintiff to show the following: "(1) that [she] is a disabled person within meaning of the ADA; (2) [she] is otherwise qualified to perform essential functions of the job, with or without reasonable accommodations by employer [or in this case, university]; and (3) [she] has suffered otherwise adverse employment [or in this case, education] as a result of discrimination."[46] In assessing a failure to accommodate claim, courts consider the following: (1) whether the requested accommodation is reasonable; (2) whether it is necessary; and (3) whether it would fundamentally alter the nature of the program.[47]

Tshudy's Complaint fails to sufficiently allege facts demonstrating one key element of a failure to accommodate claim, and that is that Tshudy requested, and Penn State granted, an accommodation specifically allowing her to take her examinations remotely. Tshudy alleges that Penn State granted her an accommodation for "remote enrollment," but it does not specify whether that

---

[45] *See Dolan v. PHL Variable Ins. Co.*, No. 3:15-cv-01987, 2016 U.S. Dist. LEXIS 161414, at *22 (M.D. Pa. Nov. 22, 2016); *Pew v. Boggio*, No. 3:15-cv-1042, 2016 U.S. Dist. LEXIS 59911, at *10-11 (M.D. Pa. May 4, 2016); *Dougherty v. Advanced Wings, LLC*, No. 1:13-CV-447, 2013 U.S. Dist. LEXIS 111334, at *13-14 (M.D. Pa. July 17, 2013).

[46] *Strausser v. Gertrude Hawk Chocolates, Inc.*, No. 3:15-cv-2458, 2018 U.S. Dist. LEXIS 48794, at *5 (M.D. Pa. Mar. 26, 2018).

[47] *See Berardelli v. Allied Services Institute of Rehabilitation Medicine*, 900 F.3d 104, 123 (3d Cir. 2018).

accommodation was understood to apply to final examinations as well.[48] Then, the Complaint provides only that Penn State "discriminated" against Tshudy by refusing to "honor the agreed upon accommodations" and requiring her to come to campus for her examinations.[49]

The missing link here are facts alleging the existence of a specific accommodation that would allow Tshudy to take her examinations from home. Without such an allegation, Tshudy "does not describe what reasonable accommodations she required or requested, nor does she describe what reasonable accommodations [Penn State] denied."[50] And where a plaintiff "does not provide the Court with any indication of what occurred to support her disability allegations, the Court cannot engage in the necessary individualized assessment to determine whether she can state a claim under the ADA."[51] Tshudy has not sufficiently pled these facts, and therefore—even in the absence of this Court's decision to dismiss the claim under Rule 8—Tshudy's ADA claim would otherwise still have been dismissed under Rule 12(b)(6). Penn State's Motion to Dismiss Tshudy's ADA claim is also granted.

---

[48]   Doc. 1 at ¶ 9.
[49]   *Id*. at ¶¶ 9-10.
[50]   *Geronimo v. Ford*, No. 3:20-CV-02145, 2021 U.S. Dist. LEXIS 173870, at *16 (M.D. Pa. Sept. 14, 2021).
[51]   *Id*. at *17.

### C.    First Amendment Claim

Tshudy alleges that Dean Conway's June 7, 2022 e-mail "was a clear attempt by the law school to silence plaintiff and abrogate her First Amendment rights in order to cover up an alleged mistake by [Penn State]."[52] Penn State argues that Tshudy has failed to sufficiently plead facts alleging a First Amendment violation because Dean Conway's e-mail did not forbid Tshudy from speaking with Penn State employees—rather, it merely instructed her to "please refrain from communicating to employees of Penn State University and Dickinson Law that there was an administrative mistake regarding the revocation of your scholarship."[53]  As Penn State puts it, "Dean Conway merely requested that Ms. Tshudy stop misrepresenting to Penn State and/or Dickinson Law employees that her scholarship was revoked in error when it was not."[54]  Penn State further argues that even if Tshudy interpreted Dean Conway's e-mail to mean that she was forbidden from speaking to all Penn State employees, the contents of the e-mail itself are not sufficient to deter a person of ordinary firmness from exercising her First Amendment rights.[55]  The Court agrees with Penn State.

Tshudy's alleged theory of liability here is unclear, so this Court will proceed by assuming that Tshudy is bringing a claim of retaliation under the First

---

[52]   Doc. 1 at ¶¶ 48-49.
[53]   *Id.*, Ex. B.
[54]   Doc. 30 at p. 9.
[55]   *Id.* at p. 10.

Amendment, applied to state actors via 42 U.S.C. § 1983. Such a claim has three elements: (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action.[56]

As this Court has stated, "*de minimus* responses to protected speech such as criticism, false accusations, or verbal reprimands do not rise to the level of actionable retaliation."[57] The facts pled, and indeed, Dean Conway's e-mail itself (which Tshudy attached to her Complaint) can, at most, be plausibly understood to be no more than criticism, false accusation, or reprimand. This Court finds Penn State's citation to the Third Circuit's decision in *Revell v. City of New Jersey* appropriate and instructive here.[58] In that case, the plaintiff alleged that defendants had violated her First Amendment rights by instructing her to stop a letter-writing campaign that was critical of the City of Jersey City and its employees.[59] The Third Circuit affirmed this decision, holding that the instruction the plaintiff/appellant received was "the equivalent to a few criticisms, admonishments, or verbal reprimands" not giving rise to a First Amendment violation. [60]

---

[56] *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006).
[57] *Herman v. Hostram*, No. 1:11-cv-989, 2011 U.S. Dist. LEXIS 120750 (M.D. Pa. Oct. 19, 2011) (internal citations and quotations omitted).
[58] 394 Fed. Appx. 903 (3d Cir. 2010).
[59] *Id*.
[60] *Id*. at 907; *see Herman*, 2011 U.S. Dist. LEXIS at *9-10.

This Court explored this standard in *Herman v. Hosterman*, where a plaintiff police officer brought a Section 1983 First Amendment Claim against a municipality and police chief, alleging that defendants retaliated against him and violated his First Amendment rights by conducting an investigation of plaintiff that was based on allegedly warrantless allegations of harassment.[61] Plaintiff there alleged that the stress of this incident gave him hypertension, which caused him to suffer various harms and prevented him from being able to continue working for a period of time.[62] The plaintiff did not allege that he was ever disciplined as a result of the investigation or that any adverse action had been taken against him as the result of the investigation.[63] In analyzing these allegations, this Court found that the alleged conduct of the defendants did not satisfy the "person of reasonable firmness" standard, specifically holding that "[p]laintiff has done nothing more than make a conclusory statement regarding [the defendant's] 'deep antagonism' without any supporting factual allegations raising the allegation beyond the speculative level. . . [t]hese allegations are precisely the type of *de minimus* allegations that the Third Circuit has found are insufficient to support a claim for First Amendment retaliation [under *Revell*]."[64]

---

[61]   *Herman*, 2011 U.S. Dist. LEXIS at *4.
[62]   *Id*.
[63]   *Id*.
[64]   *Id*. at *10.

Dean Conway's e-mail is akin to the instruction the plaintiff/appellant received in *Revell*. There, the plaintiff was explicitly told to stop an entire letter-writing campaign, and the Third Circuit affirmed the District Court's finding that no First Amendment violation had taken place. Here, Tshudy was only asked to "please refrain" from making certain statements to Penn State employees in certain offices. Guided by this Court's analysis in *Herman*, a person of ordinary firmness would not interpret Dean Conway's e-mail as a deterrent to First Amendment expression. As in *Herman*, Tshudy's allegations are speculative—the Complaint implies that Conway's e-mail was motivated by a desire to keep Tshudy from revealing to the Bursar's Office that the law school had revoked her scholarship in error, but aside from this conclusion, it pleads no additional facts that can shift this claim from speculative territory into fertile ground.

This Court notes that Tshudy's First Amendment claim is brought under 42 U.S.C. § 1983.[65] Under *Monell v. Department of Social Servs.*, a municipality may be held liable for a violation of § 1983, but only "where it has in place a policy or custom that led to the violation," and "the burden is on [the plaintiff] to identify such a policy or custom."[66] Absent an underlying constitutional violation by an agent of the municipality, however, the municipality itself may not be held liable under

---

[65] Doc. 1 at ¶ 45.
[66] *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *see Mayes v. Campana*, No. 4:20-CV-00499, 2020 U.S. Dist. LEXIS 175137, at *10-11 (M.D. Pa. Sept. 24, 2020) (internal citations and quotations omitted).

§ 1983."[67]

Tshudy's allegations fail to sufficiently plead facts demonstrating a First Amendment violation, and due to this failure, Penn State may not be held liable under Section 1983. Therefore, I need not analyze this claim under *Monell* and its progeny. Penn State's Motion to Dismiss Tshudy's First Amendment claim is granted with prejudice because this Court does not believe that further amendment can cure this claim's defects described herein.

## IV. CONCLUSION

For the reasons stated above, Penn State's Motion to Dismiss is granted. Tshudy's first claim (due process) and third claim (First Amendment) are dismissed with prejudice pursuant to Rule 12(b)(6). Tshudy's second claim (discrimination under the ADA) is dismissed without prejudice pursuant to Rule 8(a)(2).

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[67]  *Id.*